# EXHIBIT "B"

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

SINGLE EMPLOYER WELFARE
BENEFIT PLAN TRUST et al

   vs.

MIDA INC et al

NO.  2009-35200

## NOTICE TO DEFEND - CIVIL

   You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

   YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

   IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY COUNTY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19401
(610) 279-9660, EXTENSION 201

KORESKO LAW FIRM, P.C.
BY: John J. Koresko, V, Esquire
ATTY. I.D. #42795
200 W. Fourth Street
Bridgeport PA 19405
(610) 992-2200                                          Attorneys for Plaintiff


IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION -- LAW

| | | |
|---|---|---|
| **SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST:** | : | |
| **by PennMont Benefit Services, Inc., Plan Administrator** | : | |
| **200 W. Fourth Street** | : | |
| **Bridgeport, PA 19405,** | : | No. 2009-35200 |
| **Plaintiff** | : | |
| **vs.** | : | |
| | : | **COMPLAINT** |
| **MIDA, Inc.** | : | |
| **21 Wilderness Dr.** | : | |
| **Voorhees, New Jersey 08043** | : | |
| | : | |
| **and** | : | |
| | : | |
| **Harry H. Monokian, DMD, PA** | : | |
| **21 Wilderness Dr.** | : | |
| **Voorhees, New Jersey 08043** | : | |
| | : | |
| **and** | : | |
| | : | |
| **Harry H. Monokian, Individually** | : | |
| **21 Wilderness Dr.** | : | |
| **Voorhees, New Jersey 08043** | : | |
| | : | |
| **and** | : | |
| | : | |
| **Cynthia Monokian, Individually** | : | |
| **21 Wilderness Dr.** | : | |
| **Voorhees, New Jersey 08043** | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiff, Single Employer Welfare Benefit Plan Trust (SEWBPT) by its plan

administrator, PennMont Benefit Services, Inc, ("PM"), by its undersigned counsel, submit this

Complaint against Defendants MIDA, Inc., Harry H. Monokian, DMD, PA,

Harry H. Monokian, individually and Cynthia Monokian, individually, and allege the following:

## Preliminary Statement

1. This is an action for declaratory relief to confirm that Plaintiff can permanently stop distributions from the trust estate to an employer and its owner-employees who terminated participation in the arrangement. Plaintiff seeks a declaration that by operation of the Plan and Trust documents, especially Article 9 of the Plan documents, and the Participation Agreements executed by the Defendants, the Plaintiff Administrator has the authority to determine and enforce the ineligibility of Defendants for benefits and distributions due to violations of the law, submission of misinformation on census forms, or other causes. Plaintiff seeks a declaration of the rights and obligations of the parties.

2. Plaintiff seeks a declaration that it is entitled to indemnification from the corporate Defendants for expenses and fees incurred by the trustee and its representatives, including those incurred in defending against the actions of a defendant [pursuant to the express provisions of Plan documents]; that such payment or set off against any amount otherwise due to defendants does not constitute a breach of fiduciary duty in violation of trust documents; and that such payments comply with applicable law.

## Parties

3. Plaintiff Single Employer Welfare Benefit Plan Trust (referred to herein as "SEWBPT" or the "Trust") is a trust organized and existing under the laws of the Commonwealth of Pennsylvania with an address at 200 W. Fourth Street, Bridgeport, PA 19405.

4. Plaintiff PennMont Benefit Services, Inc. ("PM") is a Pennsylvania corporation, which is the Plan Administrator for SEWBPT named in the governing documents.

5. PM provides administrative services relating to SEWBPT.

2

6.   Defendant Cynthia Monokian ("CM") is an adult individual whose address is 21 Wilderness Drive, Voorhees, New Jersey 08043.

7.   Defendant Harry H.  Monokian ("HM") is an adult individual whose address is 21 Wilderness Drive, Voorhees, New Jersey 08043.

8.   Defendant MIDA, Inc. ("MIDA") is believed to be a New Jersey Corporation whose President is Cynthia Monokian, and the corporation can be served at 21 Wilderness Drive, Voorhees, New Jersey 08043.

9.   Defendant Harry H. Monokian, DMD, PA ("HHMPA") is believed to be a New Jersey professional corporation, and Harry H. Monokian is its principal.  The corporation can be served at 21 Wilderness Drive, Voorhees, New Jersey 08043.

### Jurisdiction and Venue

10.      The subject matter jurisdiction of this Court is based upon 42 Pa. Cons. Stat. Ann. §1601 et seq.  The amount in controversy exceeds $50,000, exclusive of interest and costs.

11.      By its terms the SEWBPT Trust can only provide benefits to qualifying owner-employees, so the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. 1001 et seq., ("ERISA") does not apply, and the state claims under this Complaint are not preempted by ERISA.

12.      Pursuant to Pennsylvania Rule of Civil Procedure 2179, venue is proper in this Court, because, among other things, Plaintiff is located in this County, the subject Plan is administered in this County, the choice of law provision in the subject Plan and Trust selects the Commonwealth of Pennsylvania, and the parties consented to this Commonwealth as forum pursuant to the Trust Agreement, the Plan Document and the Adoption Agreements signed by or on behalf of each Defendant.

3

13.     The Writ of Summons filed in this case was served on Defendants by certified mail pursuant to Pennsylvania's long-arm statute, more than 30 days ago.

## Factual Background

14.     On or about December 8, 1998, Defendant MIDA by Cynthia Monokian executed Adoption Agreements to join the Regional Employers' Assurance Leagues (Ex. "1") and adopted the Leagues' "Voluntary Employees' Beneficiary Association Health and Welfare Plan and Trust" (Ex. "2") and its companion Trust (Ex. "3").

15.     On or about October 18, 1995 Defendant Harry H. Monokian, DMD executed Adoption Agreements to join the Regional Employers' Assurance Leagues (Ex. "4") and adopted the Leagues' "Voluntary Employees' Beneficiary Association Health and Welfare Plan" (Ex. "2") and its companion Trust (Ex. "3").

16.     By express provision of the applicable trust indenture, the aforesaid plan provisions are incorporated by reference into the trust documents and are referred to as "REAL VEBA" or the "VEBA."

17.     REAL VEBA is, and at all relevant times was, a multiple employer welfare benefit arrangement, described in section 3(1) of ERISA, that provides death benefits to more than 300 employers throughout the United States.

18.     The applicable plan and trust documents vest PennMont with the absolute authority to amend the arrangement at any time.

19.     Each individual employer that wishes to obtain benefits for its employees through REAL VEBA and the SEWBT did so by executing an Adoption Agreement and other plan documents, as determined in the sole and absolute discretion of the plan administrator.

4

20.     The original MIDA Adoption Agreement names Corestates Bank, N.A., trustee of the VEBA and the original HHMPA Adoption Agreement names Commerce Bank, N.A., trustee of the VEBA.  The present Trustee is Penn Public Trust as to both plans.

21.     The arrangement of an adopting employer, like MIDA and HHMPA provides a death benefit to eligible participating employees.

22.     The trustee of the VEBA and SEWBT purchases life insurance policies on the lives of participating employees in order to reinsure the plan's risks relating to payment of benefits and assure its solvency to pay benefits.

23.     In addition to being the owner of the life insurance policies, the trust is the named beneficiary of all death benefit proceeds, such structure being a requirement of the VEBA and/or SEWBPT documents and Internal Revenue Service requirements articulated in General Counsel Memorandum 39440 (1985).

24.     Defendants made contributions to the trust pursuant to the Plan and Trust documents.

25.     Defendants took the aforesaid actions as part of their desire to use the trust as a vehicle for estate planning and asset protection.

26.     During their review of the arrangement and their decision to become involved, the Defendants at all times relied on their attorney and friend, Lawrence ("Larry") Michaels, Esquire.

27.     Mr. Michaels was formerly associated with the law firms of Fox Rothschild and Edwards & Angell.

28.     In connection with the adoption of the VEBA's terms by the corporate Defendants, the individuals CM and HM executed releases of Plaintiff and gave PM, its

5

attorneys, and employees an irrevocable power of attorney to take all necessary actions relating to the trust, the benefits, and the Defendants' participation.

29.     In 2006 the Internal Revenue Service adopted regulations under section 419A(f)(6) of the Internal Revenue Code which impacted the manner in which REAL VEBA and other similar trusts could operate.

30.     PennMont advised plan participants, like CM and HM, and adopting employers like MIDA and HHMPA, that they could no longer rely on 26 USC § 419A(f)(6) as a basis for any deduction they might take for tax purposes.

31.     Further, participants and employers were advised that PennMont amended the Plan documents to accurately reflect the status of the deductions of contributions under section 419(e) of the Internal Revenue Code or more commonly termed the Single Employer Plan.

32.     After the changes in the Internal Revenue Service's treatment of welfare benefit plans, Cynthia Monokian as president of MIDA, Inc. wanted to terminate MIDA's welfare benefit arrangement.

33.     On April 4, 2008 MIDA, Inc. executed an agreement whereby Cynthia Monokian would receive 10 annual payments of $32, 433.29.

34.     Cynthia Monokian also executed a document, a Receipt and Release, providing for reimbursement of the trust estate (Ex. "5").

35.     Despite the changes in the Internal Revenue Service's treatment of welfare benefit plans, Harry H. Monokian on behalf of Harry H. Monokian, DMD, PA, opted to remain in the amended arrangement and elected a welfare benefit for medical coverage. That arrangement is still active.

36.     The Trust Agreement has a choice of law provision stating:

6

> This Trust is created and accepted in the Commonwealth of
> Pennsylvania and shall be administered under the laws thereof, and
> all questions concerning the interpretation or legality of this Trust
> shall be determined in accordance with the laws of the
> Commonwealth of Pennsylvania, without regard for principles of
> conflict of laws.

37.     PennMont Benefit Services, Inc. ("PM") provides administrative services relating

to SEWBPT including those prior VEBA plans where participants such as Harry H. Monokian

DMD, PA elected to continue as a SEWBPT. The benefit structure was adopted by both MIDA,

Inc. and Harry H. Monokian. DMD, PA, as evidence by the attached Adoption Agreements (Exs.

"1" and "4," respectively)

38.     Defendants also executed a Participation Agreement and Limited Power of

Attorney (Exs. 6 and 7). The original documents and any subsequent single employer

modification are governed by the following language:

> The undersigned Employee hereby agrees to participate in the Employer's
> Welfare Benefit Plan, adopted under the Regional Employers' Assurance
> Leagues ("REAL") Voluntary Employees' Beneficiary Association
> ("VEBA") plan and trust. The undersigned certifies that his/her
> participation is voluntary, and agrees to abide and be bound by the rules
> and regulations adopted by the Trustee, Plan Administrator, and/or the
> League relating to participation in REAL VEBA. The undersigned
> acknowledges that the provisions of REAL VEBA may be amended or
> terminated at any time; and therefore, any benefits provided may be
> modified or eliminated in the future.
>
> * * *
>
> The undersigned Employee hereby appoints PennMont Benefit Services,
> Inc. ("PennMont"), the present plan administrator and John J. Koresko, V,
> Esquire, secretary of the plan committee, or their authorized agent,
> employee, or delegate, to serve as Limited Attorney in Fact with respect to
> all matters connected with any and all matters relating to the procurement
> and maintenance of benefits payable to Employee pursuant to REAL
> VEBA and the Employer's Welfare Benefit Plan. Without limiting the
> generality of the foregoing, the Limited Attorney in Fact shall have the
> authority to complete and execute any and all documents on behalf of
> Employee, including applications for insurance coverage, orders to secure,
> exchange, or terminate insurance contracts, or any other document

7

considered by the plan administrator, in its sole and absolute discretion, to be incident to administration or operation of the plan. **This limited power of attorney shall be irrevocable so long as REAL VEBA is in existence, and shall not be affected by Employee's subsequent disability, incapacity, incompetency or death. Employee agrees, for itself, its heirs, personal representatives, successors and assigns, to release the REAL VEBA Trustee, PennMont, Mr. Koresko, their agents, employees, successors and assigns, and any other third parties who rely on the validity of this document, from any liability which may result from any action taken in reliance on or in connection with this document and the powers granted hereunder.** (emphasis added).

39.     The REAL VEBA and SEWBPT documents provide that the Trustee and Administrator

shall administer the plan in accordance with the Plan Documents.

40.     With respect to the present action other relevant portions of the Plan Documents are as

follows:

5.10 <u>General Limitation on Benefit Payment</u> –

Notwithstanding any provisions of this Plan and Trust, a Participant who has less than ten (10) years of participation shall forfeit any benefit payable hereunder if it is determined by the Plan Administrator that he has engaged in a disqualifying act with respect to the Employer, Employees, or to the League. A Participant shall be deemed to have engaged in a disqualifying act if he is determined by the Plan Administrator to have: (1) been guilty of committing theft, fraud, or embezzlement with respect to the Employer; or (2) committed any criminal or malicious act [not rising to the level of a crime] which damages the person or property of the Employer, Employees or the League. **The judgment of the Plan Administrator as to whether a Participant has committed a disqualifying act shall be final, unless without evidence to support such judgment.** (emphasis added) (Ex. "2").

41.     Article 9.02, as amended, reads as follows:

9.02 <u>Termination Surplus</u> — Except as otherwise provided herein, it shall be impossible for any part of the contributions under this Plan to be used for, or diverted to, purposes other than the operations of this arrangement and the Benefit of the Participants or their Beneficiaries and for the other applications of funds permitted by the Plan and Trust documents or by law, all of which shall be determined by the Administrator in its sole and absolute discretion.

(a)     Upon dissolution of the Plan and/or termination of the Employees' association from any organization sponsoring the arrangement, whether or not by virtue of an Employer's voluntary or involuntary termination of membership or other event, any assets remaining in the Trust Fund, in excess of amounts determined necessary for satisfaction of all liabilities to existing Beneficiaries entitled to a present benefit, shall be classified as surplus, and may be applied in whatever manner by the Administrator, in its sole and absolute discretion. The Administrator is not required to make any distribution of either benefits or surplus to any participant, regardless of any actual or deemed fiduciary duty under the circumstances, it being the intention of this arrangement that these and similar actions regarding the structure and determination of benefits are functions of a settlor, who may make a decision in connection with this provision, or otherwise act, in a setting in which it is or could be deemed to be acting under a conflict of interest.

(b)     If the Trustee or Administrator decides, in their sole and absolute discretion, to devote surplus to provide benefits, regardless of whether they may be acting under a conflict of interest:

(1) Such amounts devoted to benefits shall be used to provide (either directly or through the purchase of insurance) life, sick, accident or other benefits within the meaning of Regulation Section 1.501 (c)(9), pursuant to criteria that do not provide for disproportionate benefits to officers, shareholders or highly compensated employees of the Employer; or

(2) If any distribution is made to members, it shall be pro-rata based on the total benefits payable to which such Member and his beneficiaries would be entitled to pursuant to ARTICLE 5 compared to the total benefits payable to which all Members and their beneficiaries would be entitled pursuant to ARTICLE 5; or

(3) Distributions shall be based on objective and reasonable standards which do not result in either unequal payment to similarly situated Participants or in disproportionate payments to officers, shareholders or highly compensated employees of the Employer.

(c)     In the event an Employer terminates its membership in the Trust estate, either voluntarily or involuntarily, any amount payable pursuant to section 9.02(b) shall be made only from the aggregate assets of the Trust constituting the Participant Account(s) attributable to such Employer's Employees, reduced in the sole and absolute discretion of the Trustee or Administrator for expenses, reserves and other amounts, including without limitation those described in section 9.02 (c).

(d)     Nothing herein shall be interpreted to require distribution under section

9

9.02(b) of forfeitures or other amounts classified by the Trustee or Plan Administrator as surplus, unallocated experience gains or losses for the benefit of the entire Trust. Any demutualization proceeds, payments, or amounts are to be classified as separate surplus, never allocated for the payment of benefits. The determination of amounts distributable hereunder by the Trustee or Plan Administrator shall be final, in its sole and absolute discretion, regardless of whether any person might find the decision of the Administrator unreasonable.

(e)     Nothing herein shall be interpreted or applied to cause this Plan to be administered or operated in a manner constituting prohibited "experience rating" with respect to an Employer, as that term is used in section 419A(f)(6) of the Code and the regulations thereunder.

42.     Article 9.03(d) of the Plan, as amended, reads as follows:

(d)     In the event the Employer adopts amendments to its benefit structure, no such amendments shall be effective unless and until they are approved by the Administrator, which approval may we withheld in the sole and absolute discretion of the administrator regardless of its motivation. If any are inconsistent with the Plan, Trust, or the Adoption Agreement, this Employer's Plan shall no longer be considered an arrangement related to the Plan under the Trust, but shall be considered an individually designed plan without any funding. (Ex. "2")

43.     The discretion of the Administrator is governed as follows:

10.22 Absolute Discretion of Fiduciaries. Notwithstanding any provision of any document or rule concerning the Fund to the contrary, whenever any person takes an act which involves the exercise of discretion, it shall be assumed the degree of discretion is sole and absolute. It is intended that review of any action shall be measured against an "abuse of discretion" standard, notwithstanding the existence of any actual or perceived conflict of interest.

44.     Mandatory Arbitration is required:

10.24 Arbitration - Each Participant, Participating Employer, Beneficiary, and the Trustees of the Fund hereby agrees to submit any appeal from an adverse decision of the Trustees or Administrator to an arbitrator. Any arbitration request shall include, as a mandatory part thereof, any assertions of any claims under any federal or state law arising with reference to the claimant's association or participation with any plan or

trust arrangement of the Administrator, its employees, officers, agents, attorneys, directors successors and assigns. The Arbitration may be pursued under supervision of the American Arbitration Association in accordance with the rules of its "Employee Benefit Plan Claims" arbitration rules, or such public or private alternate dispute resolution ("ADR") forum as the Administrator shall employ. Any Participant, Participating Employer or Beneficiary whose claim has been denied may initiate arbitration under said rules provided that such proceeding is commenced by a written letter to any office of the Plan Administrator, and the administrator of Arbitration within sixty (60) days following receipt from the Fund of the decision reached by the Board of Trustees. The request for arbitration must be accompanied by a copy of the denial of claim form, where available, and a filing fee payable to the designated ADR forum. The ADR forum will then provide the claimant with a copy of its rules and the arbitration shall be conducted in accordance therewith. The arbitration shall be conducted at such place and time designated by the ADR forum. The arbitrator shall give deference to the Administrator's benefit eligibility decision and any interpretation of the Plan's terms upon which the decision was based. The arbitrator may overturn the Administrator's decision only if the Administrator's interpretation of the Plan's terms was arbitrary and capricious, notwithstanding the existence of any actual or alleged conflict of interest. The Trustees, Participants, Beneficiaries and Employers who are the subject to the Plan are bound by the decision of the arbitrator; and the arbitrator's decision may be recorded in any court of competent jurisdiction as a judgment. This arbitration provision applies to any claim at law or equity. Venue shall be in Montgomery County, Pennsylvania or such other location chosen by the Administrator. No arbitration shall occur if the claimant does not pay the fee assessed for ADR in advance. (Ex. "2")

45.     Before initiating arbitration, the Administrator is permitted to file an action:

10.25 Protective Filing. Notwithstanding any provision for arbitration or alternative dispute resolution, the Trustee or Administrator shall be permitted to file a writ of summons, and other appropriate documents, in a court of the Commonwealth of Pennsylvania to vest jurisdiction and venue involving any matter arising under the Plan and Trust. It is the intention of this provision that the Fund and its fiduciaries and delegates shall not be required to engage in legal action elsewhere, and shall be protected to the fullest degree from an inconvenient forum in the event any party attempts to employ a court to litigate a claim arising under the Plan and Trust or any applicable law. No protective filing shall be considered a waiver of the administrative process or mandatory arbitration contemplated by this Plan and Trust. The Court of Common Pleas shall, notwithstanding arbitration, issue orders and writs necessary to bind witnesses and parties, including enforcement of discovery orders, and orders for sanctions, as if the arbitration were an actual court proceeding. The failure of any party potentially

11

> benefiting hereunder from filing a claim within one year of an event
> entitling him or her to a benefit shall be deemed a waiver thereof, and this
> provision shall be interpreted as a statute of repose. (Ex. "2")

46.　　The plan documents vest substantive and administrative interpretations of the plan documents and benefits in the sole and absolute discretion of the Plan Administrator.

47.　　The Adoption Agreement executed by Defendants incorporates by reference the plan document.

48.　　The Plan and Trust documents provide payment or continuing payment of benefits is in the sole and absolute discretion of the Administrator.

49.　　In addition, the governing documents do not require the plan to pay any additional amounts to any beneficiary as interest.

50.　　The Defendants were never vested in any benefits. Indeed, courts have held that the absence of a vesting provision allows employers to amend their plans virtually at will, even in discriminatory fashion. *In re Unisys Corp. Retiree Medical Ben.ERISA Litigation*, 58 F.3d 896 (3d Cir. 1995); *Smith v. Hartford Ins. Co.*, 6 F.3d 131 at 136 (3d Cir. 1994); *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 95 (3d Cir. 1992) (ERISA does not require automatic vesting of welfare benefit plans); *Confer v. Custom Engine Co.*, 952 F.2d 41, 43 (3d Cir. 1991) (noting a plan sponsor may change benefits prospectively by formal written notice); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1160 (3d Cir. 1990) (citing H.Rep. No. 807, 93rd Congr., 2d Sess. 60, reprinted in 1974 U.S. Code Cong. & Admin. News 4670, 4726) ("Congress did not impose vesting requirements on welfare plans under ERISA because it determined that "to require the vesting of those ancillary benefits would seriously complicate the administration and increase the cost of plans.")

51.     In matters involving these types of arrangements, the Trustee or PennMont is
entitled to request a declaratory judgment in a court of competent jurisdiction, and assess
attorney fees and costs, if the beneficiary refuses to agree and comply with the discretionary
determinations of the Plan Administrator.

52.     In the case at bar Cynthia Monokian in her own right and as an officer of MIDA,
Inc. and Harry H. Monokian, DMD in his own right and as the principal of Harry H. Monokian,
DMD, PA took or threatened to take certain actions that harmed the Plan and Trust and
consequently disqualifies each of them from further participation in or distributions from the
Trust.

53.     As noted Defendant Cynthia Monokian attempted to terminate the MIDA Inc.
welfare benefit plan and entered into an indemnification agreement and release signed on
December 14, 2007 and attached hereto as Exhibit "5." Also attached are documents signed by
this Defendant as to the termination election for distribution. (Ex. "8").

54.     On or about October 14, 2009 Defendant Harry H. Monokian, DMD through his
counsel sought to set aside the termination as well as the release agreed to by Cynthia Monokian
and demanded that the plan assets be transferred to Dr. Monokian. This demand was made
despite the fact that neither of the Defendants had an ownership interest in any of the plan assets.

55.     All of the Defendants refused to submit all disputes to arbitration and threatened
legal action against the administrator and the Trust.

56.     At no time prior to late 2009 did any Defendant ever meet John Koresko, to
whom they gave their irrevocable power of attorney.

57.     In 2007 and 2008, the Defendants requested that the Trust estate extend to them a
legal services benefit so that a coordinated and competent defense could be raised.

13

58.     In connection with challenges to that assessment the individual Defendants made recorded statements to the Internal Revenue Service. Those statements disclosed that Cynthia Monokian was and continues as an employee and an officer of Harry H. Monokian, DMD, PA. This fact was never disclosed on any of the census forms certified and submitted to the Plan Administrator.

59.     The failure to make an accurate disclosure of the employees in the arrangements was material, in that they jeopardized the tax advantaged status of VEBA and later the SEWBPT. In addition the failure to disclose could jeopardize other plan participants' and the plan administrator's litigation with the Internal Revenue Service to obtain reimbursement of tax paid on disallowed deductions and/or a declaration that the deductions should be allowed.

60.     The misstatement of census information is a specific ground for exclusion from the trust and cessation of all benefits, in the discretion of the Administrator.

61.     It is believed and therefore alleged that due to their dissatisfaction with the Plan Administrator's refusal to accede to improper demands, the Defendants made serious misrepresentations concerning the Plaintiff to government agencies.

62.     While the Defendants were receiving the benefit of the legal services provided by the Trust, they were not liable for any additional taxes to the Internal Revenue Service.

63.     In late 2009 the Defendants decided to obtain different counsel and entered into an agreement with the Internal Revenue Service as to the payment of taxes based on IRS' disallowance of deductions of VEBA contributions.

64.     The IRS told the Defendants to demand moneys from the trust to pay the taxes to which Defendants voluntarily conceded.

14

65.     The IRS action was part of the IRS litigation strategy to undermine the actions of

the Administrator and trustee in competently and successfully contesting 102 separate

assessments to date.

66.     Because of Defendants' actions, Plaintiff has incurred legal and administrative

costs, with the amount and interest accruing.

## COUNT I
### (Declaratory Judgment As To All Defendants)

67.     The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as

if the same were set forth at length herein.

68.     Defendants seek to set aside a release and indemnification agreement.

69.     Defendants have demanded payment of plan assets to which they are not entitled.

70.     Defendants have demanded a distribution from the trust for income taxes, which

is not among the benefits provided by the trust.

71.     Defendants have failed to abide by the plan, trust, adoption agreements, and their

participation agreements.

72.     As a result, PennMont and the Plan have been subjected to various threats of

litigation.

73.     An actual and justifiable controversy exists between the Plaintiff and Defendants

as to the conduct of the arbitration process, and whether the Defendants took acts detrimental to

the Plan and Trust and its fiduciaries in violation of applicable provisions of the plan and trust

documents.

74.     Accordingly, Plaintiff is entitled to declaratory judgment by this Court of its

rights and obligations under the Plan.

75.     Declaratory relief from this Court will resolve the outstanding issues between
Plaintiff and the Defendants including whether or not the conduct of the Defendants disqualifies
them from receipt of any distribution or any form of plan participation.

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 42 Pa.C.S.A. § 7532,
et seq., Plaintiff seeks a judicial declaration by this Court that, the actions of the Defendants are
detrimental to the trust, its participants, and its fiduciaries. In addition Plaintiff seeks a
declaration that Defendants are disqualified and are ineligible for any distributions from or
participation in the Trust. Plaintiff seeks a declaration that it is entitled to payment of costs of
suit, reasonable attorneys' fees, pre-judgment and post-judgment interest, and such additional
relief as the Court deems just and appropriate.

## COUNT II
### (Declaratory Judgment vs. Defendants)

76.     The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as
if the same were set forth at length herein.

77.     The trust has already made payments to CM on the basis of materially false
information.

78.     The actions of the Defendants herein constitute an attempt to wrongfully abstract
assets from the trust.

79.     Article 5.10 of the Plan Documents as set forth above provides that a
disqualifying act is sufficient basis to deny distribution or continued participation in the Plan.

80.     The action of the Defendants is a disqualifying act which permits the
Administrator in its discretion to terminate payments and terminate participation.

16

81.     An actual and justifiable controversy exists between Plaintiff, their fiduciaries,

and Defendants regarding the interpretation of the Plan and Trust and the Administrator's

conclusion that Defendants forfeited their rights to any distribution or plan participation.

82.     Plaintiff seeks a judgment that such does not constitute a breach of fiduciary duty

in violation of Plan documents.

83.     Plaintiff seeks a judgment that its actions are in compliance with applicable law.

84.     Accordingly, Plaintiff is entitled to declaratory judgment by this Court of the

rights and obligations of the Administrator to cease payments.

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 42 Pa.C.S.A. §7532

(West 2001), et seq., Plaintiff seeks a judicial declaration by this Court that Plan and Plan

Administrator have permission to:

> A. refuse to payout any benefit or termination distribution to any
> of the Defendants;
>
> B. refuse to pay out any benefit to Defendants because their actions
> are detrimental to Plan. Those acts constitute an attempt to abstract
> Plan assets; arbitrary and capricious threats of litigation; and,
> refusal to arbitrate in violation of the plan documents;
>
> C. if the Court determines that Cynthia Monokian is still entitled to receive a
> termination distribution, said distribution shall be made in ten (10) annual
> installments of $32, 433.29 pursuant to the express terms of the Plan and Trust
> documents and termination agreement, that such payment does not constitute a
> breach of fiduciary duty in violation of applicable law, and that actions comply
> with applicable law;
>
> D. to charge the trust fund, if any, with all costs of suit, reasonable
> attorneys' fees, pre-judgment and post-judgment interest, as a
> prevailing party pursuant to the plain language of the trust
> indenture and the common fund doctrine;
>
> E. declare that Harry H. Monokian, DMD, PA has no rights to
> further participation in the SEWBPT and has forfeited all rights to

17

any benefits due to the violation of the Plan and Trust documents and the attempted abstraction of plan assets and arbitrary and capricious threats of litigation;

F. declare that the Administrator and Trustee have no duty to make any distribution on account of Defendants' settlement of their income tax controversies or for any other reason;

G. declare that Defendants have no legal or equitable interest in any life insurance, annuity contract, or other asset of the trust; and

H. such additional relief as the Court deems just and appropriate.

## COUNT III
### (Declaratory Judgment)

85. The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as if the same were set forth at length herein.

86. Plan Document Article 10.10 Indemnification of the Administrator by the Employer states:

> The Employer hereby agrees to indemnify the Administrator for and to hold it harmless against any and all liabilities, losses, cost or expenses (including legal fees and expenses) of whatsoever kind and nature which may be imposed on, incurred by or asserted against the Administrator at any time by reason of the Administrator's Service under this Agreement if the Administrator did not act dishonestly or in willful violation of the law or regulation under which liability or loss, cost or expense arose. Such amounts may be charged as expenses under the Plan and Trust against the assets contributed by the Employer which otherwise be employed or distributable hereunder. (Ex. "2").

87. Plaintiff is entitled to complete indemnification from Defendants due to the actions as set forth above. Such indemnification is proper upon application of Article 2.09 and 10.1 of the Plan ( Ex. "2") as well as any trust document which is found to apply. (Ex. "2,"

18

Articles 5.07, 5.09, 6.06, 6.07, 7.5, 10.10), as well as both Defendants' powers of attorney and related indemnifications contained therein.

88. An actual and justifiable controversy exists between Plaintiff and Defendants regarding the interpretation of the Plan that the indemnification clause is valid and provides indemnification coverage for the losses, including legal fees, suffered by Plaintiff.

89. Accordingly, Plaintiff is entitled to declaratory judgment by this Court of the rights and the obligations of Defendants under the Plan.

90. Declaratory relief from this Court will resolve the outstanding issues between Plaintiff and Defendants regarding the obligations of employer under the Plan to indemnify Plaintiff pursuant to the Plan.

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 42

Pa.C.S.A. § 7532 (West 2001), et seq., Plaintiff seeks a judicial declaration by this Court that the indemnification clause is valid and Defendants are obligated to indemnify Plaintiff as provided under the Trust and other related documents, together with all compensatory and consequential damages, costs of suit, reasonable attorneys' fees, pre-judgment and post-judgment interest, and such additional relief as the Court deems just and appropriate.

## COUNT IV
### (Declaratory Judgment vs. Defendants)

91. The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as if the same were set forth at length herein.

19

92.   Plan Document Article 9.04 <u>Termination</u> states:

> The Employer shall have the right to terminate its participation in this Plan by delivering written notice of termination to the Trustee, at least thirty (30) days prior to the proposed date of termination. The Trustee shall have the right to involuntarily terminate the Employer's participation in this Plan for any reason which would cause the Plan and Trust not to qualify for exemption under Section 501(c)(9), or for any other action attributable to the Employer or its Employees which the Trustee, in its sole and absolute discretion, determines to be conduct detrimental to the League, this Plan, or the Trust, including but not limited to, false certification in the Adoption Agreement or other misrepresentation. (Ex. "2").

93.   Defendant Harry H. Monokian DMD, PA has breached its promises, as set forth in the Plan, by failing to honor its promise to provide complete information and required forms including but not limited to census forms.

94.   An actual and justifiable controversy exists between Plaintiff and this Defendant regarding the interpretation of the Plan that the termination clause is valid and provides for required forms.

95.   Accordingly, Plaintiff is entitled to declaratory judgment by this Court that Harry H. Monokian DMD, PA can be involuntarily terminated pursuant to the plan documents, and of the rights and the obligations of Harry H. Monokian DMD, PA and its employees under the Plan.

96.   Declaratory relief from this Court will resolve the outstanding issues between Plaintiff and Harry H. Monokian DMD, PA regarding termination pursuant to the Plan.

WHEREFORE, pursuant to the Uniform Declaratory Judgment Act, 42 Pa.C.S.A. § 7532 (West 2001), <u>et seq.</u>, Plaintiff seeks a judicial declaration by this Court that Harry H. Monokian DMD, PA is terminated from the Plan; that its past, present and future employees and their beneficiaries have no rights under the Plan; that the termination clause is valid and Harry H. Monokian DMD, PA was validly required to provide accurate forms under the Plan, together with all compensatory and consequential damages, costs of suit, reasonable attorneys' fees, pre-

20

judgment and post-judgment interest, and such additional relief as the Court deems just and appropriate.

## COUNT V
### (Breach of Plan and Trust Documents )

97.     The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, as if the same were set forth at length herein.

98.     As set forth above, all Defendants promised to perform all duties under the Trust and associated documents.

99.     As described above, Plaintiff has and will suffer expenses and losses under the terms of the Plan because of all of the Defendants' actions.

100.     All Defendants have contractual obligations contained in the Plan and Trust documents.

101.     Plaintiff has satisfied all conditions precedent under the Plan and Trust documents.

102.     As a direct and proximate result of these breaches of contract, Plaintiff has suffered serious harm.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, of monetary damages due and owing because of the breaches of the Plan, together with an award of compensatory and consequential damages, costs of suit, reasonable attorneys' fees, pre-judgment and post-judgment interest, and such additional relief as this Court deems just and appropriate.

## COUNT VI
### (Breach of Fiduciary Duty)

103.    Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if the same were set forth at length herein.

104.    Defendant MIDA, Inc and Defendant Harry H. Monokian DMD, PA as employers are fiduciaries within the provisions of the Trust.

105.    These employer Defendants owed, owe, and continue to owe their co-fiduciaries a duty of good faith and fair dealing.

106.    Defendants failed and continue to fail to meet the minimum standards of co-fiduciary good faith and fair dealing they owe to Plaintiff.

107.    Defendants breached their co-fiduciary duty of good faith and fair dealing toward Plaintiff to the extent that they have acted in bad faith and engaged in conduct calculated to further their own economic interests at the expense of the remaining participants of the Trust who are employed by other participating employers.

108.    Defendants breached and continue to breach their duty of good faith and fair dealing by, among other things, engaging in the conduct described above and in the following respects:

    a.    failing to treat Plaintiff honestly, fairly and openly in the investigation, handling, adjustment and settlement of the plan termination and any claims;

        b.    misrepresenting facts, law and terms of the Plan to Plaintiff and others;

        c.    failing  to follow the provisions of the Plan for administrative relief;

22

    d.      fostering litigation in an effort to obtain more than that which would be reasonably fair under the terms of the Plan and any termination agreement;

    e.      acting in direct opposition to the interests of the Plan and Trust and/or placing their own interests over those of the participants in the Plan and Trust;

    f.      causing Plaintiff to enter into possibly expensive and emotionally and physically stressful litigation, in order to gain an advantage;

    g.      engaging in such other acts and omissions violative of their duty of good faith and fair dealing;

    h.      violating applicable statutes, regulations, and contractual and common law duties.

    109.    As a direct and proximate result of these breaches of the duty of good faith and fair dealing, Plaintiff has suffered serious harm.

    WHEREFORE, Plaintiff demands judgment, jointly and severally, awarding monetary damages, yet to be ascertained, together with compensatory and consequential damages, costs of suit, reasonable attorneys' fees, pre-judgment and post-judgment interest, punitive damages, and such additional relief as this Court deems just and appropriate.

## COUNT VII
### (Injunction and Arbitration)

    110.    Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if the same were set forth at length herein.

WHEREFORE, this Honorable Court should issue an order compelling Defendants to proceed to alternative dispute resolution consistent with the Plan and Trust documents, and enjoining them from initiating or pursuing any action in any court against the Plaintiff.

Respectfully submitted,

DATED: March 29, 2010

John J. Koresko, V
KORESKO LAW FIRM, P.C.
200 W. Fourth Street
Bridgeport PA 19405
(610) 992-2200

Attorneys for Plaintiff

# EXHIBIT 1

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

# THE REGIONAL EMPLOYERS' ASSURANCE LEAGUES

## VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION

## HEALTH AND WELFARE BENEFIT PLAN

## ADOPTION AGREEMENT

### MIDA, INC.

Sponsored by:

PENN-MONT BENEFIT SERVICES, INC.

THE REGIONAL EMPLOYERS' ASSURANCE LEAGUES

VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION
HEALTH AND WELFARE BENEFIT PLAN

ADOPTION AGREEMENT

## TABLE OF CONTENTS

| SECTION | | PAGE |
|---------|---|------|
| SECTION 1 | FUNDING | 1 |
| SECTION 2 | DEFINITIONS | 1 |
| SECTION 3 | ELIGIBILITY REQUIREMENTS | 1 |
| SECTION 4 | PARTICIPANTS' CONTRIBUTIONS | 2 |
| SECTION 5 | BENEFITS | 2 |
| | a. Limitations | 2 |
| | b. Benefit Base | 2 |
| | c. Life Benefits | 2 |
| | d. Other Benefits | 2 |
| SECTION 6 | SELF-EMPLOYED PARTICIPANTS - Limitations | 2 |
| SECTION 7 | BENEFIT INTEGRATION | 2 |
| SECTION 8 | PARTICIPATION AND BENEFIT DURATION | 3 |
| SECTION 9 | COMMITTEE | 3 |
| SECTION 10 | INVESTMENT DIRECTIONS TO THE TRUSTEE | 3 |
| SECTION 11 | CONSENT TO BE PARTY TO TRUST AGREEMENT | 4 |
| SECTION 12 | CERTIFICATE OF INTENTION AND UNDERSTANDING | 4 |

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

# VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION
## HEALTH AND WELFARE BENEFIT PLAN

### For Employees of

### MIDA, INC.

### ADOPTION AGREEMENT

The undersigned Employer is a member of the Regional Employers' Assurance League (hereinafter "League"), Region 2, Chapter B, Voluntary Employees' Beneficiary Association and hereby adopts the Voluntary Employees' Beneficiary Association Health and Welfare Plan and its companion Trust sponsored by the League by executing this Adoption Agreement and the provisions herein set forth herein on this _____ day of _____December_____, 1998.

1.  **FUNDING – §4.02**

    Initial Deposit: $1000.00

    Funding Policy: §4.01 and §4.04

    Fully Insured

2.  **DEFINITIONS – §1.04**

    a.  Plan Name: The Plan name shall be the MIDA, INC. HEALTH AND WELFARE BENEFIT PLAN.

    b.  Trust Name: The Trust name is The Regional Employers Assurance League, Region 2, Chapter B, Voluntary Employees' Beneficiary Association Trust, as amended, which is incorporated herein by this reference.

    c.  Administrator: PENN-MONT BENEFIT SERVICES, INC.

    d.  Compensation: Includes bonuses, overtime and commissions.

    e.  Effective Date. January 1, 1998.

    f.  Entry Date: January 1 of the year subsequent to new participant eligibility.

    g.  Plan Year: The twelve (12) month period of January 1 to December 31, 1998.

    h.  Trustee: CORESTATES BANK, N.A.

    i.  Retirement: Participant's voluntary separation from employment upon the later of age 65 or the fifth anniversary of the Participant's initial plan participation.

3.  **ELIGIBILITY REQUIREMENTS – §3.04**

    The determination of eligibility shall be made in the following manner: Any Employee of the Employer (who has otherwise completed the requirements of paragraphs below) shall be eligible to participate in the Plan if he shall complete the required period of service, specified in "a" below, with the Employer or if he shall complete the required period of service during any Plan Year which includes the Anniversary date of his employment with his Employer. A Month of Service shall mean a period of time one month in length, during which an Employee completes at least one Hour of Service, as defined in Section 3.04 of the Plan. "Employee" means those Employees whose customary employment is for 1,000 or more hours per year.

    a.  Immediately upon service with the Employer. This Plan does not recognize service with a predecessor entity.

    b.  Attained a minimum age of 21 years.

    c.  Job Class: Those members of collective bargaining units with whom the matters of retirement provisions and health and welfare provisions have been the subject of good faith bargaining, shall be excluded from Participation in the Plan and Trust.

Copyright by Penn-Mont Benefit Services, Inc.                     1                                    REAL VEBA (Rel.4/85)

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

4.   **PARTICIPANTS' CONTRIBUTIONS - §4.01(B)**

Participants do not contribute under this Plan

5.   **BENEFITS - §5.01**

a.   Limitations   Anything herein to the contrary notwithstanding, the benefits are limited:

(1)   as provided in Plan Section 4.04, respecting evidence of insurability in insured plans.

(2)   as provided in Plan Section 6, respecting integration of this Plan with other Plans.

(3)   as provided in Plan Section 7, respecting benefit duration.

b.   Benefit Base - §5.03

An Employee's Benefit Base shall be his compensation, with adjustments only as provided in Section 5.03. An Employee who has had less than twelve (12) Months of Service shall have a Benefit Base as if his current rate of compensation extended over twelve (12) months.

c.   Life Benefits - Limitations §5.02(a) .

Life benefits are provided as follows:

1.   Employee-Participants receive a life benefit equal to [ 39. 26 ] times the Employee's Benefit Base.  UPON THE DEATH OF A PARTICIPANT, THE PLAN DOES NOT DISTRIBUTE TO NAMED BENEFICIARIES AN AMOUNT IN EXCESS OF THE PLAN MULTIPLE.

2.   Spouse-Participants do not participate in Life benefits.

3.   Dependent-Participants other than spouses of Employees do not participate in Life benefits.

d.   Other Benefits - Limitations § 5.02(a)

There are no other benefits.

6.   **SELF-EMPLOYED PARTICIPANTS - Limitations § 1.04(a)(4)**

Proprietors and partners do not participate in this Plan.

7.   **BENEFIT INTEGRATION**

The Benefits under this Plan are not integrated with or reduced by the Benefits under other private or public plans.

DEC-23-98 WED 15:20 .                                                    P.02

DEC-23-1998 15:24                                                        P 02

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

8.   PARTICIPATION AND BENEFIT DURATION

   a.   Participation in Life Benefits

   Service Period Only
   On an Employee's Severance for any reason other than his death, his participation in the Plan shall cease.
   The participation of his spouse and dependents shall terminate on Severance for any reason, including
   death.

   Nothing herein shall serve to hinder a Participant's exercise of conversion rights on any Contract.

   b.   Duration of Life Benefits

      1.   Except as provided in paragraph (2), the Life Benefit shall consist only of current protection,
           containing no cash value (such as paid-up or cash surrender value), irrespective of whether
           the provision of such benefit is funded by the Trustee with ordinary variable, universal, or other
           life Contracts. The Participant shall have no rights in the Contract other than death benefit
           protection. Accordingly, a Participant's life benefit will in no event continue beyond the
           effective date of the Participant's effective date of severance.

      2.   Paragraph (1) shall not apply to any participant's conversion rights on any Contract, which are
           subject to the discretion of the Trustee.

      3.   Post-retirement life benefits are provided during the operation of the Plan.

9.   COMMITTEE - § 6.01

   a.   Appointment, Acceptance and Authorized Signatures of Plan Committee:

   The Committee shall consist of three (3) members, and its initial membership is set forth below.
   Each appointed member hereby acknowledges and accepts appointment to the Committee.

   _____   Cindy Monohan

   _____   Lawrence Michaels, Esquire

   _____   John J. Koresko V, Esquire, C.P.A.

   b.

   This election by the Employer is irrevocable and supersedes Article 6, Section 6.01 of the Plan. In the event changes take place
   in the membership of the Committee, the remaining Committee members shall appoint new members. The Committee shall
   notify the Trustee of the changes and provide specimen signatures of the new members as provided in Section 6.01(v).

   John J. Koresko, V is appointed as secretary of the Committee and the Committee and the Trustee are authorized to act upon
   the signature of the Secretary alone in matters pertaining to the Trust and the Plan.

10.   INVESTMENT DIRECTIONS TO TRUSTEE

   a.   The above listed are the authorized names of the Committee appointed under Section IX of the Employee Welfare
        Benefit Plan under the REGIONAL EMPLOYERS ASSURANCE LEAGUES VEBA Trust upon whose direction
        the TRUSTEE, in this case CORESTATES BANK, N.A., may rely for actions to be taken by the Committee
        according to the provisions of the Plan.

   b.   The Trust is a directive Trust, and the Committee shall direct the investment program of the Trustee, subject to the
        veto power of the Trustee to prohibit purchases of Plan assets which the Trustee will not hold, or which could subject
        the Trust to unrelated business taxable income, or which the Trustee determines, in its absolute discretion, would
        be detrimental to the League, the Plan and Trust or constitute a breach of fiduciary duty. In any event, the Trustee
        shall have the discretion to choose the vendor of any investment vehicle or contract.

Copyright by Penn-Mont Benefit Services, Inc.                    3                    REAL VEBA (Rel.4/92)

# APPLICATION FOR REAL VEBA MEMBERSHIP

| | |
|---|---|
| Name of Corporation: | MIDA, INC. |
| Street Address: | 151 Greentree Road, Suite A<br>Marlton, NJ 08053 |
| Phone: | 609 983 9820 |
| Name of Contact: | Cindy Monokian |
| Number of Employees: | Non-Union: 2   Union: 0 |

WE HEREBY apply for membership in The Regional Employers Assurance League:

REGION:        2

CHAPTER:        B

and seek permission to adopt the League's Voluntary Employers' Beneficiary Association Health and Welfare Benefit Plan and Trust, with the understanding that we will be eligible for all services and benefits until the League is notified in writing of any voluntary or involuntary termination of such membership. We understand that our membership is subject to the provisions of the League Charter and By-Laws, and we agree to be bound thereby.

We certify that our primary place of business lies within the geographic limitations of the Region applied for.

By: _Cindy Monokian_

Date: 12/8/98          Title: President

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

REGION 1: (NEW ENGLAND)
MAINE, MASSACHUSETTS, RHODE ISLAND, VERMONT, NEW HAMPSHIRE, CONNECTICUT

REGION 2: (NORTH EAST)
PENNSYLVANIA, NEW YORK, NEW JERSEY, DELAWARE

REGION 3: (MID ATLANTIC)
NORTH CAROLINA, VIRGINIA, WEST VIRGINIA, MARYLAND, KENTUCKY

REGION 4: (SOUTH EAST)
TENNESSEE, SOUTH CAROLINA, GEORGIA, FLORIDA, ALABAMA, MISSISSIPPI, PUERTO RICO

REGION 5: (GREAT LAKES)
OHIO, INDIANA, ILLINOIS, MINNESOTA, MICHIGAN

REGION 6: (MID-WEST)
WISCONSIN, IOWA, MISSOURI, NORTH DAKOTA, SOUTH DAKOTA, NEBRASKA, KANSAS

REGION 7: (SOUTH WEST)
LOUISIANA, ARKANSAS, OKLAHOMA, TEXAS, NEW MEXICO

REGION 8: (ROCKY MOUNTAIN)
MONTANA, WYOMING, COLORADO, UTAH

REGION 9: (WEST COAST)
ARIZONA, NEVADA, CALIFORNIA, HAWAII

REGION 10: (NORTH WEST)
IDAHO, WASHINGTON, OREGON, ALASKA

CHAPTER A: MEDICAL PROFESSIONALS

CHAPTER B: MERCHANTS

CHAPTER C: MANUFACTURERS

CHAPTER D: LEGAL PROFESSIONALS

CHAPTER E: BUILDING TRADESMEN

CHAPTER F: SERVICE PROFESSIONALS

CHAPTER G: ENTERTAINERS AND ATHLETES

Penn-Mont Benefit Services, Inc.

REAL VEBA (Rel. 4/85)

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

## WAIVER OF NOTICE AND CONSENT TO HOLDING OF
### SPECIAL MEETING OF THE BOARD OF DIRECTORS OF

### MIDA, INC.

The undersigned, being all the Directors of an "S" corporation organized under the laws of New Jersey, desiring to hold a Special Meeting of the Board of Directors of said Corporation, hereby waive notice and consent to holding thereof on the

_8th_ day of _December_ , 1998,

at  151 Greentree Road, Suite A
    Marlton, NJ 08053

at  _12:00_ _P_ .M., and do further affirm and ratify motions which were resolved and adopted at said meeting and all action taken be valid and legal and the same force and effect as though notice of said meeting had been duly given.

WITNESS our signatures this

_8th_ day of _December_ , 1998,

x _Cindy Mondkian_
Signature of Cindy Mondkian, President/Secretary

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

### MINUTES OF SPECIAL MEETING OF
### BOARD OF DIRECTORS OF

### MIDA, INC.

The members of the Board of Directors of this Corporation held a special meeting, pursuant to the Waiver of Notice set forth above. All the Directors of the Corporation were present.

The President of the Corporation called the meeting to order. A discussion occurred concerning the establishment of a Voluntary Employees' Beneficiary Association Health and Welfare Benefit Plan under the REGIONAL EMPLOYERS ASSURANCE LEAGUES VEBA TRUST. The President indicated that it is in the interest of this corporation to establish and maintain for the benefit of certain employees of the corporation an Employees' Health and Welfare Benefit Plan.

On a motion duly made and seconded, it was unanimously resolved as follows:

RESOLVED, that this Company adopt the Voluntary Employees' Beneficiary Association Plan and Trust presented to this meeting by the President and appended hereto,

RESOLVED, that the named trustee be appointed as trustee of the Plan adopted at this meeting, and appended hereto,

RESOLVED, that the President be and hereby is authorized and directed on behalf of this corporation to execute this plan and to execute and deliver to the Trustee, the trust agreement attached to the plan with such changes in form as they deem appropriate,

RESOLVED, that the proper officers of this corporation be and they are authorized and directed to take such other action as may be necessary or appropriate to establish this plan, including, without limitation, and to comply with all disclosure and other requirements of law.

There being no further business to come before the meeting, the meeting was adjourned.

Date of Meeting: _12/8/98_     x _Cindy Mondkian_
                               Signature of SECRETARY

REAL VEBA                                                    Rel. 4/95

# EXHIBIT 2

# HEALTH AND WELFARE BENEFIT PLAN DOCUMENT

**Sponsored by:**

**PENN-MONT BENEFIT SERVICES, INC.**

## HEALTH AND WELFARE BENEFIT PLAN

### TABLE OF CONTENTS

**ARTICLE**                                                              **Page**

**ARTICLE 1 - NAME AND CONSTRUCTION**

| | | |
|---|---|---|
| 1.01 | Plan Name | 2 |
| 1.02 | Initial Deposit | 2 |
| 1.03 | Construction | 2 |
| 1.04 | Definitions | 2 |
| | a. "Actuarial Equivalent" | 2 |
| | b. "Additions" | 2 |
| | c. "Administrator" | 2 |
| | d. "Adoption Agreement" | 2 |
| | e. "Age" | 2 |
| | f. "Anniversary Date" | 2 |
| | g. "Benefits" | 2 |
| | h. "Beneficiary" | 2 |
| | i. "Board" | 2 |
| | j. "Committee" | 2 |
| | k. "Compensation" | 2 |
| | l. "Contract" | 2 |
| | m. "Disability" | 2 |
| | n. "Effective Date" | 3 |
| | o. "Employee" | 3 |
| | p. "Employer" | 3 |
| | q. "Employer Contribution Account" | 3 |
| | r "Fiduciary" | 3 |
| | s. "Fiscal Year" | 3 |
| | t. "Income" | 3 |
| | u. "Insurer" | 3 |
| | v. "Normal Retirement Age" | 3 |
| | w. "Participant" | 3 |
| | x. "Plan Name" | 3 |
| | y. "Plan Year" | 3 |
| | z. "Severance" | 3 |
| | aa "Trust Name" | 3 |
| | ab. "Trustee" | 3 |
| | ac. "Valuation Date" | 3 |
| | ad. "Year of Participation" | 3 |

**ARTICLE 2 - PRELIMINARY MATTERS**

| | | |
|---|---|---|
| 2.01 | Exclusive Benefit of Employees | 4 |
| 2.02 | Interpretation | 4 |
| 2.03 | No Diversion of Funds | 4 |
| 2.04 | Standard of Conduct | 4 |

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

| Title | | | Page |
|---|---|---|---|
| 2.05 | Delegation of Duties | | 4 |
| 2.06 | Performance Review | | 4 |
| 2.07 | Serve in More Than One Capacity | | 4 |
| 2.08 | Co-Fiduciary Responsibility | | 4 |
| 2.09 | Indemnification | | 4 |

**ARTICLE 3 - ELIGIBILITY AND PARTICIPATION**

| | | | |
|---|---|---|---|
| 3.01 | Eligibility | | 5 |
| | a. | In General | 5 |
| | b. | Limitations | 5 |
| | c. | Duration of Participation | 5 |
| | d. | Termination of Employment | 5 |
| | e. | Termination of Participation | 5 |
| 3.02 | Entry Date | | 5 |
| 3.03 | Definition of Employees | | 5 |
| 3.04 | Year of Service | | 5 |
| 3.05 | One Year Break-In-Service | | 5 |
| 3.06 | Hour of Service | | 6 |
| 3.07 | Voluntary Participation | | 6 |

**ARTICLE 4 - CONTRIBUTIONS**

| | | | |
|---|---|---|---|
| 4.01 | Contribution Amount | | 7 |
| | a. | Employer's Contribution | 7 |
| | b. | Participant's Contribution | 7 |
| 4.02 | Return of Contributions | | 7 |
| 4.03 | Required Employer Contributions | | 7 |
| 4.04 | Insurance Contracts | | 7 |
| 4.05 | Permissible Contributions | | 7 |
| 4.06 | Transfers from Other Plans | | 7 |

**ARTICLE 5 - BENEFITS**

| | | | |
|---|---|---|---|
| 5.01 | General | | 8 |
| 5.02 | Limitations | | 8 |
| | a. | Life Benefit | 8 |
| | b. | Disability Benefit | 8 |
| | c. | Severance Benefit | 8 |
| | d. | Sick and Accident Benefit | 8 |
| | e. | Other Benefit | 9 |
| | f. | Pro - Rate | 9 |
| 5.03 | Benefit Base | | 9 |
| 5.04 | Source of Benefits | | 9 |
| 5.05 | Mechanics of Payment | | 9 |
| 5.06 | Claim Procedure | | 9 |

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited     All rights reserved.

| **Title** | | **Page** |
|---|---|---|
| 5.07 | Claims Review Procedure | 10 |
| 5.08 | Excess Claims | 10 |
| 5.09 | Service Provisions for Severance Benefit | 10 |
| 5.10 | General Limitation on Benefit Payment | 10 |
| 5.11 | General Limitation on Benefit Funding | 10 |

**ARTICLE 6 - COMMITTEE AND ADMINISTRATION**

| | | |
|---|---|---|
| 6.01 | Committee Membership | 11 |
| 6.02 | Committee Action | 11 |
| 6.03 | Rights and Duties | 11 |
| 6.04 | Information | 12 |
| 6.05 | Compensation and Expenses | 12 |
| 6.06 | Consultants, Advisors and Managers | 12 |
| 6.07 | Liability Limitation | 12 |
| 6.08 | Notices and Directions | 12 |
| 6.09 | Funding Policy and Procedures | 12 |

**ARTICLE 7 - PROVISIONS RELATING TO INSURANCE**

| | | | |
|---|---|---|---|
| 7.01 | Protection of Insurer | | 13 |
| 7.02 | The Insurer Not a Party | | 13 |
| 7.03 | Insurance Company Forms | | 13 |
| 7.04 | Rules of Insurer | | 13 |
| 7.05 | Policies | | |
| | a. | General Descriptions | 13 |
| | b. | Issue Date | 13 |
| | c. | Conversion of Policies | 13 |
| | d. | Supplemental Agreement | 13 |
| | e. | Dividends | 13 |

**ARTICLE 8 - ALLOCATION AND VALUATION**

| | | |
|---|---|---|
| 8.01 | Participant Account | 14 |
| 8.02 | Valuation of the Trust Fund | 14 |
| 8.03 | Method of Valuation | 14 |
| 8.04 | Statement of Account | 14 |

**ARTICLE 9 - AMENDMENT AND TERMINATION**

| | | |
|---|---|---|
| 9.01 | Permanency | 15 |
| 9.02 | Fund Recovery | 15 |
| 9.03 | Amendments | 15 |
| 9.04 | Termination | 15 |
| 9.05 | Approval by Internal Revenue Service | 16 |

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited      All rights reserved.

## ARTICLE 10 - MISCELLANEOUS

| | | | |
|------|------------------------------------------------|----|----|
| 10.01 | Limitation on Employee's Right | 17 | |
| 10.02 | Plan Does Not Modify Employee Relationship | 17 | |
| 10.03 | Person Authorized to Act for Employer | | 17 |
| 10.04 | Alienation of Assignment | 17 | |
| 10.05 | Applicable Law | 17 | |
| 10.06 | Disputed Payments | 17 | |
| 10.07 | Continuation of Trust | 17 | |
| 10.08 | Notification of Interested Parties | 17 | |
| 10.09 | Persons Dealing With Administrator | 17 | |
| 10.10 | Indemnification of the Administrator | 17 | |
| 10.11 | Receipt and Release for Payment | 17 | |
| 10.12 | Evidence | 17 | |
| 10.13 | Waiver of Notice | 17 | |
| 10.14 | Counterparts | 18 | |
| 10.15 | Successors Etc. | 18 | |
| 10.16 | Gender and Number | 18 | |
| 10.17 | Headings | 18 | |
| 10.18 | Merger or Consolidation | 18 | |
| 10.19 | Single Employer Plan | 18 | |
| 10.20 | Limited Power of Attorney | 18 | |
| 10.21 | Trust Agreements Control | 18 | |

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

## HEALTH AND WELFARE BENEFIT PLAN

### FOR EMPLOYEES OF

### ("EMPLOYER")

### PLAN

THIS Plan is adopted by the Employer whose signature appears in the Adoption Agreement attached hereto, and evidences the Plan portion of a Health and Welfare Benefit Plan and Trust established by the Employer for the benefit of its eligible Employees.

WHEREAS, the Employer desires to provide health and welfare benefits for its eligible Employees; and

WHEREAS, the Employer desires to adopt this HEALTH AND WELFARE BENEFIT Plan and to participate in the PLAN AND TRUST dated the _____ day of _____, 19_____, as amended, thereby establishing the Employer's HEALTH AND WELFARE BENEFIT Plan which is intended to form a part of the Trust; and

WHEREAS, the Plan and Trust Agreement are being adopted pursuant to section 419 of the Internal Revenue Code of 1986, as amended, or under any comparable section or sections of any future legislation that amend, supplement or supersede said section and this agreement is designed for that purpose;

NOW, THEREFORE, it is agreed as follows:

#### ARTICLE I

#### NAME, DEPOSIT, CONSTRUCTION AND DEFINITIONS

1.01    Name - The name of this Plan shall be: The Employer's Health and Welfare Benefit Plan.

It is intended to qualify as a Plan portion of a Plan under Internal Revenue Code Section 419.

1.02    Initial Deposit - In establishment of this Plan the Employer has paid to the Trustee the amount set forth in the Adoption Agreement on account of, or in full payment of the Employer's contribution under this Plan for the Employer's taxable year.

1.03 -   Construction - Except as otherwise defined herein, terms used in this Plan shall have the meaning given them in the Internal Revenue Code of 1986, as amended, and the Employment Retirement Security Act of 1974, as amended; and this Plan shall be construed as intending compliance with same.

1.04    Definitions

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

(a)     "Actuarial Equivalent" - the amount, or level of alternative or optimal benefit forms, whose value is equal to the Normal Form of Benefit provided in the Adoption Agreement upon application of assumptions stated herein.

(b)     "Additions" - With respect to each year, the total of the amount allocated to the Participant's Employer Contribution Account.

(c)     "Administrator" - The Administrator named in the Adoption Agreement. If none is named, then the Employer shall be the Administrator.

(d)     "Adoption Agreement" - The exhibit annexed hereto as a part hereof, signed by the Employer.

(e)     "Age" - Rated age as determined for insurance purposes.

(f)     "Anniversary Date" - as provided in the Adoption Agreement.

(g)     "Benefits" - Benefits shall include disability, medical death, income and health maintenance pay and other welfare Benefits as may be adopted by the Employer pursuant to the Adoption Agreement attached hereto and made a part hereof.

(h)     "Beneficiary" - A person or persons (natural or otherwise) eligible to receive any Benefits which shall be payable under this Plan.

(i)     "Board" - The present and any succeeding Board of Directors of the Employer, if a corporation; if not a corporation, then its managing partners or sole owner.

(j)     "Committee" - The Committee provided for in Article 6 hereof.

(k)     "Compensation" - The full compensation of a Participant during the 12 months ending with the Effective Date or an Anniversary Date, but excluding nontaxable fringe Benefit items and excluding items of taxable Compensation if and as provided in the Adoption Agreement.

(l)     "Contract" - A policy issued by an insurance company, with or without an insurance element.

(m)     "Disability" - The term "Disability" shall mean a physical or mental condition which, in the judgment of the Administrator based upon competent medical evidence satisfactory to the Administrator, totally and presumably permanently prevents the covered Employee from engaging in any substantial gainful employment with the Company, provided such total Disability (1) did not arise while engaged in or as a result of having engaged in a felonious act or enterprise, or (2) did not result from performing military duty in the Armed Forces for the United States of America or of any State thereof under circumstances entitling the covered Employee to a veteran's Disability pension. In determining whether a covered Employee is totally or permanently prevented from engaging in any substantial gainful employment with the Company, there shall be excepted from consideration work performed pursuant to a medically recommended Plan for rehabilitation.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

2

(n)  "Effective Date" - The term "Effective Date" shall have the meaning set forth in Section 2.f. of the Adoption Agreement.

(o)  "Employee" - Any Employee of the Employer as defined by Treasury Regulation § 501(c)(9)-2(b).

(p)  "Employer" - The Employer adopting this Plan and any predecessor or successor which adopted or adopts this Plan.

(q)  "Employer Contribution Account" - The account maintained for a Participant to record the contributions of the Employer and adjustments relating thereto allocable to providing benefits for that Participant.

(r)  "Fiduciary" - The named Fiduciaries under this Plan are the Trustee, Administrator and the members of the Committee.

(s)  "Fiscal Year" - The taxable year employed by the Employer in reporting its income for federal income tax purposes.

(t)  "Income" - The net gain or loss of the Trust fund from investments, as reflected by interest payments, dividends, realized and unrealized gains and losses in securities, other investment transactions, and expenses paid from the Trust fund. In determining the income of the Trust fund as of any date, assets shall be valued on the basis of their fair market value.

(u)  "Insurer" - Any insurance company issuing a Contract hereunder.

(v)  "Normal Retirement Age" - as provided in the Adoption Agreement.

(w)  "Participant" - Any of the following persons who meet the Eligibility requirements provided in the Adoption Agreement:

   (1)  An actively employed Employee.

   (2)  A retired former Employee.

   (3)  A Dependent of any actively employed or retired former Employee who is a Participant. "Dependent" means the Employees' spouse; a minor child residing with the Employee; a child of the Employee who is a student (within the meaning of Internal Revenue Code Section 151(e)(4)); and any other person who is a Dependent of the Employee within the meaning of the Internal Revenue Code Section 152(a).

   (4)  The proprietor or partner of a partnership which employs the Employees if at least 90% of the total Participants on one day of each quarter of the Plan's taxable year consists of Employees and their spouses and other dependents.

(x)  "Plan Name" - As provided in the Adoption Agreement.

(y)  "Plan Year" - As provided in the Adoption Agreement.

(z)  "Severance" - As provided in the Adoption Agreement.

(aa)  "Trust Name" - As provided in the Adoption Agreement.

(ab)  "Trustee" - As provided in the Adoption Agreement.

(ac)  "Valuation Date" - The last day of each Plan year.

(ad)  "Year of Participation" - Each Plan year during which an Employee is Eligible to participate in the Plan.

(ae)  "Mistake of fact" - A bona fide miscalculation of an amount required to satisfy an Employer's funding requirements with respect to the Plan as adopted. The term shall not mean a mistake with respect to the income tax status of the Plan, or any other mistake or change of opinion prompted by a desire to terminate participation in the Plan.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

**3**

## ARTICLE 2

### PRELIMINARY MATTERS

2.01   <u>The Exclusive Benefit of Employees</u> - The Plan and Trust shall be created in the United States for the exclusive Benefit of Employees and their Beneficiaries. It shall be interpreted and administered in a manner consistent with the requirements of the Internal Revenue Code of 1986, as amended, and Regulations thereunder relating to qualified voluntary employee benefit plans and trusts.

2.02   <u>Interpretation</u> - Wherever in the Trust discretionary powers are given to any party, or wherever any interpretation may be necessary, such powers may be exercised or the interpretation shall be made in a nondiscriminatory manner.

2.03   <u>No Diversion of Funds</u> - It shall be impossible at any time prior to the satisfaction of all liabilities under the Trust, with respect to the Employees of the Employer and their Beneficiaries, for any part of the corpus, or income of the Trust to be used for, or diverted to, purposes other than for the exclusive Benefit of such Employees or their Beneficiaries.

2.04   <u>Standard of Conduct</u> - The Trustee, Plan Administrator and all the other Fiduciaries with respect to the Trust shall discharge their duties solely with the interests of all Participants and Beneficiaries and for the exclusive purpose of providing Benefit to Participants and Beneficiaries and defraying any reasonable expenses of administration; with the care, skill, prudence and diligence, under the circumstances then prevailing, that a prudent man acting in a like capacity and familiar with such certain matters would use in the conduct of the enterprise of like character and with like aims; by diversifying the investments so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so; and in accordance with the Trust and the rules and directions of the Plan Administrator.

2.05   <u>Delegation of Duties</u> - The Plan Administrator shall have sole discretion to delegate any and all Fiduciary responsibilities under the Trust (other than those of the Trustee) to designated persons. Any such delegation shall be communicated in writing to the Employer, the Plan Administrator, the Trustee, the insurer and each Participant and Beneficiary. The Trustee may appoint an investment manager who shall be a Fiduciary with the power to manage, acquire or dispose of any asset of the Trust, and who shall be a registered investment advisor, bank, individual or insurance company who has acknowledged in writing that he is a Fiduciary with respect to the Trust. Such an appointment shall be communicated in writing to the Employer, the Plan Administrator, the Trustee, the insurer and each Participant and Beneficiary. The Plan Administrator and the Trustee may additionally delegate the performance of specific ministerial responsibilities. Any reference in the Plan and Trust to "Trustee" shall also mean "Plan Administrator" when a duty, privilege or immunity has been delegated.

2.06   <u>Performance Review</u> - The Plan Administrator and the Trustee shall make a formal annual review of each such designated or appointed person's performance under this Section and may remove such persons if such action would be consistent with the requirements of §2.04. The Employer shall likewise make a formal annual review of the performance of the Plan Administrator (if different from the Employer) and the Trustee and Employer may remove such persons if such action would be consistent with the requirements of §2.04.

2.07   <u>Serve in More Than One Capacity</u> - Any Fiduciary with respect to the Trust may serve in more than one Fiduciary capacity under the Trust and may employ persons to render advice with regard to any responsibility such Fiduciary has under the Trust.

2.08   <u>Co-Fiduciary Responsibility</u> - In addition to any liability which he may have, a Fiduciary with respect to the Trust shall be liable for a breach of Fiduciary responsibility of another Fiduciary with respect to the same Trust in the following circumstances:

      (a)    if he participates knowingly in or knowingly undertakes to conceal an act or omission of another Fiduciary, knowing such act or omission is a breach;

      (b)    if, by his failure to comply with §2.04 in the administration of his specific responsibilities which give rise to his status as a Fiduciary, he had enabled such other Fiduciary to commit a breach; or

      (c)    if he had knowledge of a breach by such other Fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

2.09   <u>Indemnification</u> - The Employer may, by separate agreement, indemnify the Plan Administrator (if different from the Employer) the Trustee and any other person providing Services to the Trust to the full extent of any expenses, penalties, damages or other pecuniary loss which may be suffered as a result of his responsibilities, obligations or duties in connection with the Trust. Any amounts paid pursuant to such agreement shall not relieve any person serving in a Fiduciary capacity of his Fiduciary responsibilities and liabilities to the Trust for breaches of any Fiduciary obligations.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited        All rights reserved.

**ARTICLE 3**

**ELIGIBILITY AND PARTICIPATION**

3.01 -    Eligibility

(a)    In General - Subject to the limitations of Subsection (b), every Employee shall become a Participant under this Plan as of the date on which he first meets all of the requirements for Eligibility set forth in the Adoption Agreement.

(b)    Limitations

(1)    This Plan does not permit any condition for Eligibility which would limit eligibility or benefits to officers, shareholders, or highly compensated Employees.

(2)    This Plan requires that every Employee, otherwise eligible, who satisfies the Age and Service requirements of Subsection 3.01(a) shall be eligible to participate in this Plan as of the first day of the Plan Year in which he satisfies such requirements of Subsection 3.01(a).

(3)    In the event that a Participant in the Plan should incur a Severance and thereafter again become an Employee before he incurs a Break in Service, he shall again become a Participant in the Plan as of the date on which he first completes an Hour of Service following his re-employment.

(4)    In the event that any former Participant in the Plan whose participation in the Plan has terminated by reason of a Break in Service should again become an Employee, he shall again become a Participant in the Plan as of the first day on which he completes an Hour of Service following the last computation period in which the Break in Service occurred.

(c)    Duration of Participation - Once an Employee becomes a Participant in the Plan, his participation shall continue during his Service, including Service after his Normal Retirement Date, and shall continue during his retirement if the Benefit is destined to so provide.

(d)    Termination of Employment - Upon Termination of Employment, Eligibility to participate in this Plan shall cease, and the Employee shall have no further right to the Benefits hereunder.

(e)    Termination of Plan Participation - An Employee who otherwise meets the requirements for eligibility and participation contained herein shall be a participant in this plan only during the period the Employer participates in the plan. Upon termination of the Employer's participation, whether voluntary or involuntary, the Employee shall have no further right to the benefits hereunder, including without limitation, those benefits for which claims have been made but not yet paid on the date participation terminates.

3.02    Entry Date - The Entry Date under this Plan shall be the Effective Date and the first day of each Plan Year thereafter.

3.03    Definition of Employees - For purposes of the Plan the term "Employee" refers to the legal and bona fide relationship of the employer and employee. Section 3401(c) in the Regulations thereunder shall be used to determine whether such Employer/Employee relationship exists for purposes of this Plan.

3.04    Year of Service - For purposes of Eligibility to participate in this Plan, "Year of Service" shall mean a twelve (12) month period which an Employee has not less than 1,000 Hours of Service. The 12-month Eligibility computation shall be as follows:

(a)    The initial Eligibility computation period shall be the 12-consecutive month period beginning on the date on which the Employee's employment commenced.

(b)    The Eligibility computation period after the initial Eligibility computation period shall be the 12-consecutive month period beginning on the first anniversary of the Employee's employment commencement date and succeeding anniversaries thereof.

(c)    The Eligibility computation period of a former Participant who has incurred a Break in Service shall be the 12-consecutive month period beginning on the date on which such former Participant first completes an Hour of

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Korasko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

Service following the last computation period in which a Break in Service has occurred.

3.05    One Year Break in Service - For the different purposes herein stated, a "One Year Break in Service" hereinafter called a Break in Service, is defined as follows:

    (a)    Except as provided in Paragraph (b) below, a Break in Service is a Plan Year during which the Employee has not completed more than 500 Hours of Service.

    (b)    For purposes of Eligibility to participate in this Plan, a Break in Service is a 12-month period, computed with respect to the date on which the Employee's employment commenced, during which the Employee has not completed more than 500 Hours of Service.

    (c)    Anything herein to the contrary notwithstanding, a Break in Service will not be deemed to have occurred as a result of the following if the Employee ever returns to work on completion of the stated period or dies during such period:

        (1)    Service in the armed forces of the United States or any of its allies during a period of declared national emergency, in this time of war or in the compulsory military Service of the United States, for a period commencing with the commencement of such Service and extending for the time which his employment rights are guaranteed by applicable federal law following his discharge or Severance from such Service.

        (2)    Leaves of absence granted by an Employer in writing and in a nondiscriminatory manner for any purpose, for a period commencing with the commencement of such leave and ending with an expiration date or any extensions thereof.

3.06    Hour of Service - For several purposes herein stated, an "Hour of Service" is defined as follows:

    (a)    An Hour of Service is each hour for which an Employee is paid, or Entitled to payment, for the performance of duties, for an Employer during the applicable computation period.

    (b)    An Hour of Service is each hour for which an Employee is paid, or Entitled to payment, by an Employer on account of a period of time during which no duties are performed (irrespective of whether the Employment relationship has terminated) due to vacation, holiday, illness, incapacity (including Disability) layoff or absence. Notwithstanding the preceding sentence:

        (1)    No more than 501 Hours of Service are required to be credited under this Paragraph (b) to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period);

        (2)    An hour for which an Employee is directly or indirectly paid, or Entitled to payment, on account of a period during which no duties are performed is not required to be credited to the Employee if such payment is made or due under a Plan maintained solely for the purpose of complying with applicable workmen's compensation, or unemployment compensation or Disability laws; and

    (c)    An Hour of Service is each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Employer. The same Hours of Service shall not be credited both under Paragraph (a) or Paragraph (b) as the case may be, and under this Paragraph (c); Crediting of Hours of Service for back pay awarded or agreed to with respect to periods described in Paragraph (b) shall be subject to the limitations set forth in that Paragraph. For example, no more than 501 Hours of Service are required to be credited for payments for back pay, to the extent that such back pay is agreed to or awarded for a period of time during which an Employee did not or would not have performed duties.

    (d)    An Hour of Service is, in addition to the above, each hour required to be taken into account pursuant to Department of Labor Regulations Section 253.200b-2(b) and (c) which are hereby incorporated herein as though fully set forth.

3.07    Voluntary Participation - The participation by an Employee shall be voluntary, if Participant contributions are required under the Adoption Agreement. Any Employee who, when first eligible, does not elect to participate within the time provided may participate as of any subsequent Anniversary Date by meeting the requirements of Eligibility under the Adoption Agreement and by making the required contributions as of such subsequent Date. Each eligible Employee shall complete an Employee Participation Agreement on such forms as may be provided by the Plan Administrator, in order to participate.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

**ARTICLE 4**

**CONTRIBUTIONS**

4.01    Contribution Amount

(a)     Employer's Contributions

(1)     The Employer shall in a timely manner contribute to the Trustee all amounts (other than those required to be contributed by Participants) necessary to provide all Benefits. The amounts so required shall be certified to the Employer by the Committee.

(2)     With each such contribution, the Committee shall deliver to the Trustee written instructions on the allocation of the contributions among Benefit, when the Plan provides more than one type of Benefit.

(b)     Participant's Contributions - Participant's contributions, if any, shall be withheld or collected from them by the Employer and delivered to the Trustee on such dates as may be selected by the Employer, but at least semi-annually.

4.02    Return of Contributions - The initial contribution, or portions thereof, made by the Employer which are attributable to a mistake of fact may be returned to the Employer without earnings, but reduced to any losses attributable thereto, upon request of the Employer within one (1) year after the payment of the contribution. Any and all other contributions to this Plan by the Employer shall be irrevocable and neither such contribution nor any income therefrom, nor any increments thereon shall be used for or diverted to purposes other than for the exclusive Benefit of participating Beneficiaries of the adopting Employer.

4.03    Required Employee Contributions - Nothing contained herein shall be deemed to prohibit or otherwise prevent the Employer from requiring its participating Employees to contribute, or otherwise reimburse it for all or any portion of the cost of providing Benefits under the Plan to such participating Employee; provided, however, that the Employer may not require any such participating Employee to participate under the Plan as a condition of his employment with the participating Employer.

4.04    Insurance Contracts - If the Adoption Agreement provides for the purchase of Contracts, the Committee shall direct the Trustee to invest contributions and accruals and earnings thereon in Contracts to the extent provided herein at each Participant's entry and as necessary on any increase in his Benefit.

(a)     If evidence of insurability is required, for Participants insurable at standard rates the Trustee shall purchase group or individual Contracts providing the Benefit called for in the Adoption Agreement.

(b)     If evidence of insurability is required, for Participants found by the Insurer to be insurable only at substandard rates or with exclusions, the Contract may provide a graded Benefit or contain exclusions. If the full Benefit called for in the Adoption Agreement could be provided at additional cost and the Participant in writing agrees to pay the additional cost, the Contract shall provide the regular Benefit. If the Participant does not wish substandard insurance, or if insurance is wholly unavailable from the Insurer, then the Benefit shall be limited to an amount equal to the sum of the premiums which would have been paid had the Participant been insurable at standard rates.

4.05    Permissible Contributions - Payments on account of the contributions due from the Employer for any year may be made in cash or in kind (including insurance contracts); except that assets may not be contributed if such contribution violates the prohibited transaction rules of IRC section 4975 or the corresponding rules under ERISA section 406, if applicable.

4.06    Transfers from Other Plans -

(a)     Contributions may be effectuated via transfer from another health and welfare benefit plan and trust; provided, however, that the trust from which the funds or property are to be transferred must permit the transfer to be made, and provided, further, that, in the opinion of the Employer's legal counsel (or counsel for the Trustee, if such opinion is not available), such transfer will not jeopardize the tax exempt status of this Plan and its Trust or create adverse tax consequences for the Plan, Trust, or any participating Employer.

(b)     Transfer Contributions shall be made by delivery to the Trustee for deposit in (or assignment to) the Trust. All such contributions shall be in cash, property, or insurance contracts satisfactory to the Trustee, whose decision in this regard shall be final.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

## ARTICLE 5

### BENEFITS

5.01    General - Subject to Sec. 5.02, the Benefits provided by this Plan are stated in the Adoption Agreement.

5.02    Limitations - The Plan may provide only life and other benefits permitted pursuant to §419 of the Internal Revenue Code, or any successor provision:

(a)    Life Benefit - The Term "Life Benefit" means a Benefit including a burial Benefit or a wreath payable by reason of the death of a Participant. A "Life Benefit" may be provided directly by the Plan through self-funding or through any form of insurance permitted under section 419. It generally must consist of current protection, but also may include a right to convert to individual coverage on termination of Eligibility for coverage through the Plan. A "Life Benefit" also includes the Benefit provided under any life insurance contract purchased directly from the Plan by a Participant if the Plan is Employee-funded, or provided to a Participant if the Plan is Employer-funded.

The "Life Benefit" may be paid in a form of survivor income Benefit to a named Beneficiary or if no Beneficiary is named then to the estate of the deceased Participant. Such Benefit may be payable upon the death of the Participant in a series of monthly payments not to exceed 120 or as otherwise provided in an annuity purchased by the plan or as agreed by the Beneficiary and the Administrator, in the Administrator's sole and absolute discretion.

(b)    Disability Benefit - A Disability income Benefit shall be paid to an Employee who is disabled as defined in Section 1.04(1) herein and as selected under the Adoption Agreement.

If a covered Employee becomes totally disabled, he shall be Entitled to receive a Disability Income Benefit commencing on the first day of the month next following the date he files a written application with the Administrator, whichever shall occur last. Such payments shall cease upon the first to occur of (i) the covered Employee's death, (ii) the date the covered Employee is no longer totally disabled, (iii) the date the covered Employee no longer receives Social Security Disability payments.

Any payment made as a Disability Income Benefit under this Plan shall be deemed to be made under an accident and health Plan adopted by the Company pursuant to Code §105(c) and (d).

Disability Income Benefit may be funded through the use of Disability policies, solely by Company contributions to the Plan, or a combination thereof.

(c)    Severance Benefit - A "Severance Benefit" shall be paid to any Employee who meets the necessary requirements and who terminates employment or who is on sabbatical leave authorized in writing by the Employer, as stated in the Adoption Agreement. A Severance benefit may be provided directly by the Plan through the purchase of any form of insurance permitted under section 419 or in any other manner not violative of ERISA section 514.

(d)    Health and Accident Benefit - The term "Sick and Accident Benefit" means amounts furnished to or on behalf of a Participant in the event of illness or personal injury to the Participant. Such Benefit may be through reimbursement or through the payment of premiums to a medical Benefit or health Insurance program. Similarly, a Sick and Accident Benefit may include an amount paid to a Participant in lieu of income during a period in which the member is unable to work due to sickness or injury. Sick Benefits also include Benefits designed to safeguard or improve the health of Participants. Sick and Accident Benefits may be furnished in cash form, or in non-cash form as, for example, Benefit in the nature of clinical care services by visiting nurses, and transportation furnished for medical care.

A benefit for any Medical Expenses both before and after retirement may be provided to any Employee or his Dependents as stated in the Adoption Agreement.

"Medical Expenses" shall include all expenses as defined in Section 213(e) of the Internal Revenue Code of 1986, as amended, and shall include all amounts paid for hospital bills, doctor and dental bills, drugs, and all premiums on accident and health insurance including hospitalization, surgical and medical insurance.

"Dependents" shall mean spouse and Dependents as defined in Section 152 of the Internal Revenue Code of 1986, or as thereafter amended.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited        All rights reserved.

(e)   Other Benefit - The term "Other Benefit" includes only Benefits permitted to be offered by an organization described in Section 419 of the Internal Revenue Code, that are similar to life, health or accident benefits.  A benefit is similar to a life, health or accident benefit if:

      (1)   It is intended to safeguard or improve the health of Participant; or

      (2)   It protects against a contingency that interrupts or impairs a Participant's earning power.

(f)   Any and all of the aforementioned Benefits shall be payable as long as the assets of the Trust permit.  To the extent the assets are not sufficient to provide the Benefits outlined above, said Benefits would be paid to each Participant on a pro-rata basis.

**5.03**   Benefit Base

(a)   The "Benefit Base" for each Participant shall be set forth in the Adoption Agreement.

(b)   The calculations of each Participant's Benefit Base shall first be made at the time he commences his participation in the Plan on the basis of his Compensation at such time.

(c)   The benefit base shall not exceed the limitations contained in Section 505 (b)(7) of the Internal Revenue Code effective on the first date of participation in the plan, unless otherwise provided for by written amendment to the Adoption Agreement.

(d)   In no event shall the Benefit Base for the Severance Benefit exceed the amount described 29 C.F.R. section 2510.3-2(b)(2)(i), or any successor provision.

**5.04**   Source of Benefits - The amount of Benefit shall to the extent thereof, be paid out of Contracts and out of other funds held by the Trustee for the payment of benefits under the Plan, in the discretion of the Trustee.

**5.05**   Mechanics of Payment - The Committee shall, with respect to any Benefits, direct the Trustee to pay such benefits directly from the Trust fund.

**5.06**   Claim Procedure - Upon a Participant's death, Disability or other termination of participation in the Plan:

(a)   The Committee shall determine a Beneficiary to whom payment shall be made.

(b)   The Committee shall have the right to any time, to designate from the persons indicated below, the Beneficiary to whom payment of the Benefit shall be made.  The Committee may designate one or more of the following:

      (1)   Spouse;

      (2)   Parents;

      (3)   Children or lineal descendants of any of the children;

      (4)   A Trust created by or for the Benefit of a Participant;

      (5)   If all of the above shall die prior to the death of the Participant, then the Beneficiary shall be the estate of the Participant, if and only if the Participant has executed a waiver of estate tax consequences in form acceptable to the Committee and Trustee.

      (6)   If any Beneficiary shall die after becoming Entitled to received Benefit and before distribution is made in full, the estate of such deceased Beneficiary shall become the Beneficiary as to such balance of undistributed Benefit.

(c)   The Plan Committee shall, within 90 days from the date a Plan benefit becomes payable as determined by the Plan Committee, unless special circumstances require an extension of time, provide written notice of its decision set forth in a manner calculated to be understood by the Beneficiary.  In no event shall such extension exceed a period of 90 days from the date of the expiration of the initial 90-day period.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited      All rights reserved.

(d)    Claims for benefits under the Trust shall be filed, on forms supplied by the Plan Administrator. Written notice of the disposition of the claim shall be furnished the claimant within thirty (30) days after the application thereof is filed. In the event the claim is denied, the reasons for the denial shall be specifically set forth, pertinent provisions of the Plan shall be cited and, where appropriate, an explanation as to how the claimant can perfect the claim will be provided.

5.07    <u>Claims Review Procedure</u> - Any Employee, former Employee or Beneficiary or either who has been denied a benefit or feels aggrieved by any other action of the Employer, Plan Administrator or the Trustee, shall be Entitled, upon request to the Plan Administrator to receive a written notice of such action, together with a full and clear statement of the reasons for the action as described in §5.06(d). If the claimant wishes further consideration of his position, he may obtain a form from the Plan Administrator on which to request a hearing. Such form, together with a written statement of the claimant's position, shall be filed with the Plan Administrator on which to request a hearing. Such form, together with a written statement of the claimant's position, shall be filed with the Plan Administrator no later than ninety (90) days after receipt of the written notification provided for above. The Plan Administrator shall schedule an opportunity for a full and fair hearing of the issue within the next thirty (30) days. The decision following such hearing shall be made within thirty (30) days and shall be communicated in writing to the claimant.

5.08    <u>Excess Claims</u> - An Excess Claim shall not become a liability or claim under this plan or against the assets of the Trust or an accrued Benefit of any Employer, Beneficiary, or Participant claimant until thirty (30) days after presentment of written notice of and Excess Claim to the Committee, Plan Administrator and Trustee. For purposes of the Plan and Trust, the term "Excess Claim" is a claim for Benefits the amount of which exceeds the value of assets contributed to the trust by the Employer, including proceeds thereof and contracts adjusted for gains, losses, income and expenses attributed to (i) such assets, proceeds and contracts, (ii) the operation of this Plan and (iii) Employees' claims (other than the subject Excess Claims) under the Plan prior to presentation of the Excess Claim.

5.09    <u>Service Provisions for Severance Benefit</u> - If the Employer has elected the inclusion of the Severance Benefit in the Plan, the following provisions shall apply:

(a)    If a Participating Employee's employment is terminated for any reason giving rise to a Severance Benefit, his allocable Severance Benefit as set forth in the Adoption Agreement shall be determined by reference to the years of service of the Participating Employee and shall be distributed in accordance with the applicable provisions of the Plan. The Severance Benefit payable to the Participating Employee shall be multiplied by the percentage which corresponds with the Employee's years of service in the table set forth in the Adoption Agreement.

5.10    <u>General Limitation on Benefit Payment</u> - Notwithstanding any provisions of this Plan and Trust, a Participant who has less than ten (10) years of participation shall forfeit any benefit payable hereunder if it is determined by the Plan Administrator that he has engaged in a disqualifying act with respect to the Employer, Employees, Plan or Trust. A Participant shall be deemed to have engaged in a disqualifying act if he is determined by the Plan Administrator to have: (1) been guilty of committing theft, fraud or embezzlement with respect to the Employer; or (2) committed any criminal act or malicious act [not rising to the level of a crime] which damages the person or property of the Employer, Employees, Plan or Trust. The judgment of the Plan Administrator as to whether a Participant has committed a disqualifying act shall be final, unless made without evidence to support such judgment.

5.11    <u>General Limitation on Benefit Funding</u> - In no event shall any benefit be funded in a manner which would violate ERISA section 514 or which would constitute experience rating within the meaning of section 419 of the Code.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited    All rights reserved.

**ARTICLE 6**

**COMMITTEE AND ADMINISTRATION**

6.01    <u>Committee Membership</u> - The Employer shall appoint a Committee with the membership set forth in the Adoption Agreement to be known as the Committee.

(a)    Any Committee member may resign from office or may be removed by the Employer.  Such resignation or removal shall be accomplished at any time by delivery of a written notice of resignation to the Employer or of removal to the Committee, to take effect on a date specified therein, which shall not be less than 60 days after the delivery thereof unless an earlier date shall be mutually agreed upon.

(b)    The Employer shall file written notice with the Trustee of the names of the members of the Committee together with specimen signatures, and, as changes take place in membership, that fact and the names and specimen signatures of new members.

6.02    <u>Committee Action</u> - The Committee shall choose a secretary who shall keep minutes of the Committee's proceedings and all data, records, documents and matters pertaining to the Committee's activities.

(a)    The Committee shall act by a majority of its members at the time in office and such action may be taken either by a vote at a meeting or in writing without a meeting.

(b)    The Committee may by majority action authorize any one or more of its members to execute any documents on behalf of the Committee.  The Trustee shall accept an authorized member as representing action by the Committee until the Committee shall file a written revocation of such designation.

6.03    <u>Rights and Duties</u> - Unless an Administrator has been named in the Adoption Agreement, the Committee shall enforce this Plan in accordance with its terms and shall be charged with its general administration.  The Committee shall exercise all of its discretion in a uniform, nondiscriminatory manner and shall have all necessary power to accomplish those purposes, including but not limited to the power:

(a)    To determine all questions relating to the Eligibility of Employee to participate.

(b)    To compute and certify to the Trustee the amount and kind of Benefit payable to Participants and their Beneficiaries.

(c)    To maintain all the necessary records for the administration of the Plan other than those maintained by the Trustee.

(d)    To prepare and file or distribute all reports and notices required by law.

(e)    To authorize all the disbursements by the Trustee from the Trust.

(f)    To direct the investments to be made by the Trustee (if the Trust is directive) in a manner consistent with the objectives of the Plan and authorized by the Trust.

(g)    To make and publish such rules for the regulations of the Plan as are not inconsistent with the terms hereof.

(h)    To make any amendments to the Plan (except with respect to contribution rates) where necessary to meet the requirements of law or to protect the interests of the Participants.

(i)    To determine the application of Benefits upon dissolution and termination as provided under Section 10.02.

If an Administrator has been named in the Adoption Agreement, it shall assume and perform all and each and every, duty and responsibility to the Committee; except that if the Trust is a directive Trust as stated in the Adoption Agreement, then the sole and exclusive duty of the Committee shall be issuance of investment directions (other than those relating to Insurance Contracts) and matters incident thereto.

The term "Committee" as used herein shall include the "Administrator," unless the context of the instrument indicates a contrary intent.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited            All rights reserved.

**11**

6.04    Information - To enable the Committee to perform its functions, the Employer shall supply it with full timely information on all matters relating to the Compensation of all Employees, their Service, their retirements, death or the causes for termination or employment and such other pertinent facts as the Committee may require. The Committee shall advise the Trustee of such of the foregoing facts as may be pertinent to the Trustee's administration of the Trust.

6.05    Compensation and Expenses - The members of the Committee (but not the Administrator) shall serve without Compensation for their Services hereunder. All expenses of the Committee shall be paid by the Employer and the Employer shall furnish the Committee with such clerical and other assistance as is necessary in the performance of its duties.

6.06    Consultants, Advisors and Managers - The Committee may employ such consultants, advisors and investment managers as it deems necessary or useful in carrying out its duties hereunder, with the cost thereof to be paid by the Employer.

6.07    Liability Limitation - No Member of the Committee shall be liable for the acts or omissions to act of any investment manager appointed to manage the assets of the Plan and Trust, if the Committee in appointing such manager acted with care, skill prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

6.08    Notices and Directions

        (a)    Actions by the Employer shall be by its Board of Directors (if it is a corporation) or by its managing partner (if it is a partnership) or by its owner (if it is a sole proprietorship), and notice thereof shall be certified to the Committee by an appropriately certified copy of the action taken. The Committee shall be protected in acting upon any such notice, order, certificate or other communication believed by it to be genuine and to have been signed by the proper party.

        (b)    The address for delivery of all communications shall for the Committee, be the principal office of the Employer and, for the Employer, be its principal office marked to the attention of the President of the Employer, any managing partner or the owner; and, for the Administrator, the address certified by it for such purpose.

6.09    Funding Policy and Procedures - The Employer and named Fiduciaries shall formulate policies, practices and procedures to carry out the funding of the Plan, which shall be consistent with the Plan objectives and the provisions of applicable law. Without limiting the generality of the foregoing the Employer and named Fiduciaries shall from time to time accomplish the following:

        (a)    Establish a regular and convenient schedule of meetings no less than annually;

        (b)    Review short term, intermediate and long range investment goals;

        (c)    Determine and project Benefit liabilities;

        (d)    Make plans to satisfy the liquidity needs of the Plan;

        (e)    Consult with the Plan Actuary if one is designated, or such other advisors as may be necessary, to maintain minimum funding standards and assure the payment of Plan Benefits.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited        All rights reserved.

**12**

## ARTICLE 7

### PROVISION RELATING TO INSURANCE

7.01    Protection of Insurer - No Insurer, which may issue a policy for the purpose of this Plan, shall be required to take or permit any action contrary to the provisions of said Policy nor shall the Insurer be required to look into the terms of this Plan or question any action as authorized by the Trustee in the application for a policy or changes in an existing policy.

7.02    The Insurer Not a Party - The Insurer shall not be deemed to be a party to this Plan and its sole obligations shall be measured and determined solely by the terms of its Contracts and other agreements executed by it.

7.03    Insurance Company Forms - Any and all forms or other documents, required by the Insurer, may be executed and signed by any one Trustee. When so executed, any such document shall be accepted by the Insurer as conclusive evidence of any matters mentioned in the Plan and Trust, and any such Insurer shall be fully protected in taking any action on the faith hereof and shall incur no liability or responsibility for doing so.

7.04    Rules of Insurer - Irrespective of any provisions in the Plan, the rules of the insurer shall govern an action directed by the Committee to be taken by the Trustee with respect to any Contract.

7.05    Policies -

    (a)    General Description - The Trustee may purchase Policies on each Participant to fund any of the Benefits described in Article 5. The policy shall be a contract between the Trustee and the Insurer and shall reserve to the Trustee all rights, options and Benefits provided by the Policy and permitted by the Insurer, except that the right to name and change the Beneficiary shall be exercised by the Trustee or by the Plan Administrator or such other fiduciary other than a participant authorized to do so in writing pursuant to a power of attorney or other document..

    (b)    Issue Date - All such policies shall be issued on a non-discriminatory basis as of the Plan entry date.

    (c)    Conversion of Policies - Any Policies in effect pursuant to this Plan may contain a provision which shall permit, upon payment of an additional conversion premium, the conversion (without medical examination) of the Policy to provide individual coverage upon termination of Eligibility for coverage under this Plan.

    (d)    Supplemental Agreement - Agreements for supplemental Benefits, if available from the insurer, may be added to a policy, and the cost of such agreements shall be paid by the Employer.

    (e)    Dividends - Dividends declared upon a policy may be applied in any manner permitted by the Insurer.

    (f)    Ownership - All policies and Contracts shall be owned by the Trustee. All cash value contained in such policies and Contracts shall be owned by the Trustee. The Trustee shall be under no obligation to distribute a policy or Contract to any participant or beneficiary as part of any benefit or termination payment, but may, instead, distribute the cash surrender value of same.

    (g)    Incorporation into plan - Notwithstanding anything in this Plan and the Trust to the contrary, in the event any benefit provided hereunder is funded or intended to be funded by a policy or Contract, the terms and conditions of such policy or Contract (whether issued or pending via application) shall be construed as terms and conditions for the payment of the such benefit. Without limiting the generality of the foregoing, no benefit which is funded or intended to be funded by a policy or Contract shall be payable to any Participant or Beneficiary unless or until the amount payable under such policy or Contract is received by the Trust. For purposes of this Plan and the Trust, all benefits shall be deemed intended to be funded by a policy or Contract unless the Employer shall notify the Administrator and Trustee in writing of its election to the contrary.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited    All rights reserved.

## ARTICLE 8

### ALLOCATION AND VALUATION

8.01    <u>Participant Account</u> - The Trustee shall maintain a separate account for each adopting Employer to cover Employees of the Employer, which shall be credited and charged as provided hereunder for amounts allocable to same..

8.02    <u>Valuation of the Trust Fund</u> - The Administrator shall direct the Trustee, as of each Anniversary Date, and at such other date or dates deemed necessary by the Administrator, herein called "valuation date", to determine the net worth of the assets comprising the Trust Fund as it exists on the "Valuation date" prior to taking into consideration any contribution for the Plan Year. In determining such net worth, the Trustee shall value the assets comprising the Trust Fund at their fair market value as the "valuation date" and shall deduct all expenses for which the Trustee has not yet obtained reimbursement from the Employer or the Trust Fund. All policies and Contracts may be valued at $1.00 or other nominal value, and neither the Administrator nor Trustee shall be required to report changes in cash values.

8.03    <u>Method of Valuation</u> - In determining the fair market value of assets other than securities for which trading or bid prices can be obtained, the Trustee or Plan Administrator may appraise such assets itself, or in its discretion, employ one or more appraisers for that purpose and rely on the values established by such appraiser or appraisers.

8.04    <u>Statement of Account</u> - As soon as practicable after the end of each Plan Year, but not later than 120 days, the Plan Administrator shall present to each Participating Employer a statement of the account showing the credit to his account at the beginning of such Year, any changes during the Year, the accrued Benefit at the end of the Year, and such other information as the Employer may determine. However, neither the maintenance of accounts, the allocation of credits to accounts, nor the statement of account shall operate to vest in any Participating Employee of a Participating Employer any right to interest in or to any asset of the Trust except as the Trust specifically provides. The Plan Administrator's determination of the account balances shall be final unless deemed arbitrary and capricious by a court of competent jurisdiction.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Korusko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

**14**

## ARTICLE 9

### AMENDMENT AND TERMINATION

9.01   Permanency - It is the expectation of the Employer that his Plan and the Trust, and the payment of contributions hereunder, will be continued indefinitely but continuance of the Plan and of the Trust is not assumed as a contractual obligation of the Employer.

9.02   Fund Recovery - It shall be impossible for any part of the contributions under this Plan to be used for, or diverted to, purposes other than the exclusive Benefit of the Participants or their Beneficiaries.

(a)   Upon dissolution of the Plan and/or termination by virtue of an Employer's voluntary or involuntary termination of membership in the Plan, any assets remaining in the Plan after satisfaction of all liabilities to existing Beneficiaries shall be applied in one or a combination of the following, as selected by the Trustee or Plan Administrator in its discretion.

(1)   Such remaining assets shall be used to provide (either directly or through the purchase of insurance), life, sick, accident or other benefits within the meaning of Regulation Section 419, pursuant to criteria that do not provide for disproportionate benefits to officers, shareholders or highly compensated employees of the Employer; or

(2)   Such remaining assets shall be distributed to members pro-rata based on the total benefits payable to which such Member and his beneficiaries would be entitled to pursuant to ARTICLE 5 compared to the total benefits payable to which all Members and their beneficiaries would be entitled pursuant to ARTICLE 5; or

(3)   Distributions shall be based on objective and reasonable standards which do not result in either unequal payments to similarly situated Participants or in disproportionate payments to officers, shareholders or highly compensated employees of the Employer.

(b)   In the event an Employer terminates participation in the Plan, either voluntarily or involuntarily, any distribution to Employees of such Employer pursuant to section 9.02(a) shall be made only from the aggregate assets of the Trust constituting the Participant Account(s) attributable to such Employer's Employees. Without limiting the generality of the foregoing, distributions to a particular Participant may be based upon a formula, the numerator of which is all compensation of the Employee during years of participation in this Plan, and the denominator of which is all such compensation for all Employees of the Employer earned during their years of participation.

(c)   Nothing herein shall be interpreted to require distribution under section 9.02(b) of forfeitures or other amounts classified by the Trustee or Plan Administrator as unallocated experience gains or losses for the benefit of the entire Trust; and the determination of amounts distributable hereunder by the Trustee or Plan Administrator shall be final unless determined by to be arbitrary and capricious by a court of competent jurisdiction.

(d)   Nothing herein shall be interpreted or applied to cause this Plan to be administered or operated in a manner constituting prohibited "experience rating" with respect to an Employer, as that term is used in section 419 of the Code.

9.03   Amendments

(a)   The Employer shall have the right to amend the Benefit structures in this Plan from time to time, and to amend or cancel any such amendments.

(b)   The Administrator shall have the right to amend this Plan, in its sole discretion, from time to time and to amend or cancel any such amendments. Without limiting the scope of the foregoing, such amendments may include modification of the status of this plan for federal income tax purposes if future developments in the law indicate the utility of such change.

(c)   Such amendments shall be set forth in an instrument in writing executed by the amending party. An amendment may be current, retroactive or prospective, in each case as provided therein. Provided, however, that no amendment shall:

(1)   Cause any of the assets of the Trust to be used for or diverted to purposes other than for the exclusive Benefit of Participants and their Beneficiaries.

(2)   Have any retroactive effect so as to deprive any Participant or his Beneficiary of any accrued Benefit, except that such changes may be made as are required by the Internal Revenue Service in order for the Plan to be initially approved and qualified under the Internal Revenue Code and its regulations as a Health and Welfare Benefit Plan.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

**15**

(3)    Create or effect any discrimination in favor of Participants who are highly compensated, who are officers or the Employer, or who are stockholders of the Employer.

In no event shall this provision be construed as vesting any right to any benefit to any individual prior to the time all events have occurred which fix the nature, timing and amount of such benefit and absolute entitlement thereto.

(d)    In the event the Employer adopts amendments which are inconsistent with the Plan, Trust, or the Adoption Agreement, this Employer's Plan shall no longer be considered a part of the Plan under the Trust, but shall be considered an individually designed Plan. In such event, all assets of this Employer's Plan shall be segregated by the Trustee and delivered to a Trustee designated by the Employer, as soon as practicable.

9.04    <u>Termination</u> - The Employer shall have the right to terminate its participation in this Plan by delivering written notice of termination to the Trustee, at least thirty (30) days prior to the proposed date of termination. The Trustee shall have the right to involuntarily terminate the Employer's participation in this Plan for any reason which would cause the Plan and Trust not to qualify under Section 419, or for any other action attributable to the Employer or its Employees which the Trustee, in its sole and absolute discretion, determines to be conduct detrimental to this Plan or Trust, including but not limited to, false certification in the Adoption Agreement or other misrepresentation.

9.05    <u>Approval by Internal Revenue Service</u> - Notwithstanding anything herein to the contrary, if, pursuant to an application filed by or on behalf of the Plan, the Commissioner of Internal Revenue Service or his delegate should determine that the Plan does not initially qualify as a Plan and Trust under Section 419 of the Code, and such determination is not contested, or if contested, if finally upheld, then the Plan shall be void ab initio and all amounts contributed to the Plan by the Employer, less expenses paid, shall be returned within one year of the final unappealable, judicial or administrative determination and the Plan shall terminate, and the Trustee shall be discharged from all further obligations.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

16

## ARTICLE 10

## MISCELLANEOUS

10.01   Limitation on Employee's Rights - Participation in this Plan shall not give any Employee the right to be retained in the employ of the Employer.

10.02   Plan Does Not Modify Employment Relationship - Nothing herein contained shall be construed as giving any Participant the right to be retained in the Service of the Employer, nor upon dismissal or upon his voluntary termination, to have any right or interest in the Trust other than as provided herein.

10.03   Person Authorized to Act for Employer - Whenever under the terms of this Plan the Employer is permitted to require to take some action, such action may be taken by any officer of the Employer who has been duly authorized by the Board of Directors of the Employer, or by its managing partners (if it is a partnership) or by its owner (if it is a sole proprietorship).

10.04   Alienation or Assignment - To the extent permitted by law, no payment to any person under any Policy, nor the right to receive such payments, nor any interest in the Trust, shall be subject to assignment, alienation, transfer or anticipation, either by voluntary or involuntary act of any Participant or Beneficiary nor by operation of law, nor shall such payment or right or interest be subject to the demands or claims of any creditor of such person, nor be liable in any way for such person's debts, obligations or liabilities.

10.05   Applicable Law - Except as provided by Section 514 of the Employee Retirement Income Security Act of 1974, this Plan shall be construed, administered and governed under the laws of the Commonwealth of Pennsylvania, where the Plan and Trust principal offices are located; provided however, that any contrary provision in the Trust Agreement shall control.  If any provisions of this Plan shall be invalid or unenforceable, the remaining provisions hereof shall continue to be fully effective.

10.06   Disputed Payments - If a dispute arises as to the proper recipient of any payment or delivery of any Policy, the Trustee, in its sole discretion, may withhold or cause to be withheld, such payment or delivery until the dispute shall have been settled by the parties concerned or shall have been determined by a court of competent jurisdiction.  Adequate written notice as provided by Section 5.06 must be given to any Participant or Beneficiary whose claim for Benefit is denied.

10.07   Continuation of Trust - In the event of a dissolution, merger, or consolidation of the Employer, provisions may be made by the successor for the continuance of the Plan, and said successor shall in such event be substituted in the place of the present Employer by an instrument authorizing such substitution executed by the Employer and his successor, a copy of which shall be delivered to the Trustee and the Administrator.

10.08   Notification of Interested Parties - Proper written notice within the permitted time period shall be given to interested parties by the Plan Administrator of any request by the Employer to the Internal Revenue Service for any advance determination of qualification of the Trust, Trust Administrator or Trust Termination.

10.09   Persons Dealing with Administrator - No person dealing with the Administrator shall be required to see to the application of any money paid or property delivered to the Administrator or to determine whether or not the Administrator is acting pursuant to any authority granted to it under this Agreement.

10.10   Indemnification of the Administrator by the Employer - The Employer hereby agrees to indemnify the Administrator for and to hold it harmless against any and all liabilities, losses, cost or expenses (including legal fees and expenses) of whatsoever kind and nature which may be imposed on, incurred by or asserted against the Administrator at any time by reason of the Administrator's Service under this Agreement if the Administrator did not act dishonestly or in willful violation of the law or regulation under which such liability, loss, cost or expenses arose.  Such amounts may be charged as expenses of the Plan and Trust against assets contributed by the Employer which would otherwise be employed or distributable hereunder.

10.11   Receipt and Release for Payment.  Any payment to a Participating Employee, his legal Representative, beneficiary or other permitted party, shall to the extent thereof, be in full satisfaction of claims hereunder against the Plan, the Trustee, Plan Administrator, and Employer, any of whom may require such Participating Employee, his legal representative, beneficiary, or other payee to execute a receipt and release in such form as shall be required by the Trustee or Plan Administrator, in its sole and absolute discretion.  In the event of termination of participation in the Plan, the Trustee or Plan Administrator may require such a receipt and release from the Employer.

10.12   Evidence - Evidence required of anyone under this agreement may be by certificate, affidavit, document or other instrument which the person acting in reliance thereon considers pertinent and reliable, and signed, made or presented by the proper party.

10.13   Waiver of Notice - Any notice required under this Agreement may be waived by the person Entitled thereto.

10.14   Counterparts - This Plan may be adopted in an original and any number of its successor and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited          All rights reserved.

17

10.15   Successors Etc.- This Agreement shall be binding on the Employer and its successor and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives.

10.16   Gender and Number - Words used in the Masculine shall apply to feminine where applicable, and when the context requires, the plural shall be read as the singular and singular as the plural.

10.17   Headings - Headings used in this Plan are inserted for convenience of reference only and any conflict between such headings and the text shall be resolved in favor of the text.

10.18   Merger or Consolidation - This Plan may be merged or consolidated with other plans which qualify under Section 501(c)(9) provided that the surviving Plan also constitutes a Plan qualified (i) under 501(c)(9) as a voluntary employees' beneficiary association, and (ii) as a single employer plan described in Sections 413, 414 of the Code and 1.414(l) of the Regulations, as these provisions apply to health and welfare benefit plans, without giving effect to references therein unique to pension, profit sharing, or other plans of deferred compensation.

10.19   Single Employer Plan - It is intended that this plan qualify as a single employer health and welfare benefit plan described in Section 419 of the Code, as these provisions apply to health and welfare benefit plans, without giving effect to references therein unique to pension, profit sharing, or other plans of deferred compensation.  This is not a plan of deferred compensation.  The execution of an Adoption Agreement by a Participating Employer shall give rise to the creation of a new Plan with a separate benefit structure under the Plan.

10.20   Limited Power of Attorney - By Adopting this Plan, the Employer hereby appoints the Administrator, Trustee, or their delegate its attorney in fact with respect to all questions, controversies, and issues relating to the Plan before the Internal Revenue Service and Department of Labor. This power of attorney is irrevocable.

10.21   Trust Agreements Control. - The Plan and the Trust are both parts of a single integrated welfare benefit program and shall be construed together.  In the event of any conflict between the provisions of this Plan document and the Trust document adopted in connection herewith, the terms of the Trust document shall control; and the terms of the Trust shall be considered incorporated by reference into this Plan.

Copyright 1992 by Penn-Mont Benefit Services, Inc. & Koresko & Associates, PC, Attorneys at Law. Unauthorized Duplication Strictly Prohibited       All rights reserved.

**18**

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

REGIONAL EMPLOYERS' ASSURANCE LEAGUES
VOLUNATRY EMPLOYEES' BENEFICIARY ASSOCIATION
AND SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST

Sponsored by PennMont Benefit Services, Inc.

## AMENDMENT OF TRUST AND INCORPORATED PLAN DOCUMENTS

A.    Whereas, pursuant to Article 9 of the Plan and Article X of the Trust, the Plan Administrator may amend the Plan and Trust, and

B.    Whereas, actions on behalf of any participating employer may be carried out pursuant to express delegation of authority and power of attorney executed by participating employers and participating employees; to wit:

9.03    Amendments

    (a)    The Employer shall have the right to amend the Benefit structures in this Plan from time to time, and to amend or cancel any such amendments.

    (b)    The Administrator shall have the right to amend this Plan, in its sole discretion, from time to time and to amend or cancel any such amendments. Without limiting the scope of the foregoing, such amendments may include modification of the status of this plan for federal income tax purposes if future developments in the law indicate the utility of such change.

    (c)    Such amendments shall be set forth in an instrument in writing executed by the amending party. An amendment may be current, retroactive or prospective, in each case as provided therein.

and

C.    Whereas, the prevailing law in the United States is that welfare benefits are not vested and may be amended or terminated at any time, and amendments may be effective retroactively, and this Amendment is enacted in reliance on that existing law; and

D.    Whereas, recent case law indicates the wisdom of the Amendment.

NOW THEREFORE, effective April 7, 2009, the Plan Documents, which are incorporated by reference into each Trust are amended to provide the following:

I.    Add to PREAMBLE:

and,

Whereas any trustee appointed hereunder is intended to be a directed trustee and take direction from PennMont, in PennMont's sole and absolute discretion, and

Whereas, PennMont, as sponsor, is the settlor in fact for every benefit arrangement contemplated hereunder;

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

II.    **ARTICLE XIII – Elimination of Trustee Authority**

(a) All provisions of the master plan and trust documents relating to or referring to the Trustee, including without limitation, any powers to act, to be compensated, to possess or control assets, to be indemnified, to seek judicial review, or to exercise any responsibility whatsoever, are hereby eliminated. The Trustee shall receive its directions from PennMont and shall act strictly according to such directions.

(b) The Trustee may be dismissed without notice, and any pending dismissal notice shall be deemed amended by these terms.

(c) The Trustee shall not be entitled to possession of any assets except as specifically permitted by the Administrator.

(d) Any Trustee that fails to take directions or to apply funds according to the directions of the Administrator, or that changes any operating arrangement with the Administrator without prior approval, or attempts to demand contributions to it, or in any way attempts to exercise any influence over the Trust fund or Administrator, or transmits to any person not approved by the Administrator any information in any way connected to the Trust fund, the Plan documents, the Administrator or any employee, director, agent or successor thereof, shall be deemed to have committed a prima facie breach of fiduciary duty and shall be deemed immediately removed.

(e) The Trustee's liability under this indenture shall be strict liability, and any deviation from operating standards established by the Administrator shall be actionable. The burden of proving compliance with any terms hereunder and its adherence to fiduciary duty shall always be on the Trustee under the standard of clear and convincing evidence.

(f) The Administrator may from time to time enter into additional Trust indentures as the Administrator deems necessary under the circumstances, in its sole and absolute discretion.

(g) No Trustee shall assert any evidentiary privilege against the Administrator or any person acting on behalf of Employees or Employers.

(h) In the event that any of the duties or prohibitions on the Trustee hereunder are at variance with the Trustee's duties under any law, or inconsistent with the Trustee's procedures, the Trustee shall be deemed to have resigned immediately, waived any notice, and shall be deemed to have waived the subject matter jurisdiction of any court of law with respect to direction, and shall not be required under any theory of law or equity to require any instruction except as the Administrator shall direct.

(i) The retention of any assets by Community Trust Co., or its successors and assigns, including F&M Trust Co., for any time beyond the date of this amendment shall be deemed an acceptance of these terms without reservation. These terms shall bind any employee, agent, associate, attorney, director, officer, successor or assigns of any such Trustee.

(j) In the event the Trustee (defined as trustee, its employees, officers, directors, agents successors and assigns) shall fail to abide by these terms, PennMont shall, on behalf of itself and in addition for the benefit of the Trust estate and any participants be entitled to

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

assert, without limiting any other relief at law or equity, the following judicial relief against any party within the definition of Trustee:

**CONFESSION OF JUDGEMENT FOR LIQUIDATED DAMAGES DUE TO UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL INFORMATION OR FAILURE TO ABIDE BY TERMS:** In addition to any injunctive relief available on account of the unauthorized disclosure of the VEBA Documents or operating information, or any Document, Writing, or information protected hereunder or deemed protected by state or federal law, the aggrieved party shall be entitled to liquidated damages. Because of the difficulty of measuring same, the parties agree that liquidated damages in the amount of $250,000 per occurrence is fair and proper. THE TRUSTEE, including F&M Trust Co., HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS THE PROTHONOTARY OR CLERK OR ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT THEREIN AGAINST TRUSTEE, FOR THE AMOUNT WHICH FROM THE FACE HEREOF MAY APPEAR TO BE DUE HEREON, (OR, IF SUCH ATTORNEY SO ELECTS, FOR THE AMOUNT WHICH MAY BE DUE HEREON AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF THE AGGRIEVED PARTY SETTING FORTH THE AMOUNT THEN DUE) INCLUDING ACCRUED INTEREST, PLUS FIFTEEN (15%) PERCENT OF SUCH PRINCIPAL AND INTEREST, BUT NOT LESS THAN TWENTY-THOUSAND DOLLARS ($20,000.00), AS AN ATTORNEY'S COMMISSION, WITH COSTS OF SUIT, RELEASE OF ERRORS, AND WITHOUT RIGHT OF APPEAL. IF A COPY HEREOF, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN SAID PROCEEDING, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. ANY TRUSTEE PARTY WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT SHALL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL VOIDABLE, OR VOID, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS THE AGGRIEVED PARTY SHALL ELECT, UNTIL ALL SUMS PAYABLE OR THAT MAY BECOME PAYABLE HEREUNDER BY "RECEIVING PARTIES" HAVE BEEN PAID IN FULL. The parties consent to the exclusive venue and jurisdiction of the Court of Common Pleas of Montgomery County, Pennsylvania in all controversies related to the relationship between the parties and this Agreement, and no party other than PennMont Benefit Services, Inc., shall have any right to remove. This Agreement shall be interpreted and applied consistent with the laws of the Commonwealth of Pennsylvania, without giving effect to principles of conflict of laws.

**III.** **BENEFITS - §5.01 is amended to include the following and excise any contrary provisions:**

General - Subject to Sec. 5.02, the Benefits provided by this Plan are stated in the Adoption Agreement except as follows

No benefits shall be paid to or on account of any claimant, person, participant, or former participant (hereinafter collectively referred to as non-owner-employee ("NOE")), classified as a non-owner-employee, or to any beneficiary of any such NOE. The determination of whether a person is an owner-employee or NOE, or a beneficiary of an owner-employee or NOE shall be in

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

the sole and absolute discretion of the plan administrator.

No benefits exist under this arrangement unless and until the identity of the recipient and the amount payable hereunder shall have been determined by PennMont and shall have been agreed to, in writing, by the party deemed eligible by PennMont. Nothing hereunder shall compel PennMont to name a beneficiary or calculate any amount or seek an agreement. No beneficiary or contributor to the trust, or any plan, has any rights in any corpus, income or surplus of the trust fund. PennMont may character any amount coming into the trust fund as corpus, income or surplus, and may further classify and divide such amounts into other categories, not devoted to benefits or distribution. It is the intention of this provision to clarify that no amount is devoted to benefits until such amounts are actually and definitively designated as such, and that the expenses and charges against the trust fund designated by the Administrator shall have absolute priority, notwithstanding any other language of this trust or any plan that speaks of "exclusive benefit." In all matters relating to administration or operation of the trust, including without limitation classification, reservation, or payment of funds, and identification of any payees, PennMont may act in its sole and absolute discretion, whether or not any person might find its actions unreasonable.

IV.     TERMINATION – Article 9 is amended to include the following and excise any contrary provisions:

Section 9.02 is amended to read as follow

9.02    Termination Surplus – Except as otherwise provided herein, it shall be impossible for any part of the contributions under this Plan to be used for, or diverted to, purposes other than the operations of this arrangement and the Benefit of the Participants or their Beneficiaries and for the other applications of funds permitted by the Plan and Trust documents or by law, all of which shall be determined by the Administrator in its sole and absolute discretion.

   (a)   Upon dissolution of the Plan and/or termination of the Employees' association from any organization sponsoring the arrangement, whether or not by virtue of an Employer's voluntary or involuntary termination of membership or other event, any assets remaining in the Trust Fund, in excess of amounts determined necessary for satisfaction of all liabilities to existing Beneficiaries entitled to a present benefit, shall be classified as surplus, and may be applied in whatever manner by the Administrator, in its sole and absolute discretion.   The Administrator is not required to make any distribution of either benefits or surplus to any participant, regardless of any actual or deemed fiduciary duty under the circumstances, it being the intention of this   arrangement that these and similar actions regarding the structure and determination of benefits are functions of a settlor, who may make a decision in connection with this provision, or otherwise act, in a setting in which it is or could be deemed to be acting under a conflict of interest.

   (b)   If the Trustee or Administrator decides, in their sole and absolute discretion, to devote surplus to provide benefits, regardless of whether they may be acting under a conflict of interest:

      (1)   Such amounts devoted to benefits shall be used to provide (either directly or through the purchase of insurance), life, sick, accident or other benefits within the meaning of Regulation Section 1.501(c)(9), pursuant to criteria that do not provide for disproportionate benefits to officers, shareholders or

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

highly compensated employees of the Employer; or

   (2)   If any distribution is made to members, it shall be pro-rata based on the total benefits payable to which such Member and his beneficiaries would be entitled to pursuant to ARTICLE 5 compared to the total benefits payable to which all Members and their beneficiaries would be entitled pursuant to ARTICLE 5; or

   (3)   Distributions shall be based on objective and reasonable standards which do not result in either unequal payment to similarly situated Participants or in disproportionate payments to officers, shareholders or highly compensated employees of the Employer.

(c)   In the event an Employer terminates its membership in the Trust estate, either voluntarily or involuntarily, any amount payable pursuant to section 9.02(b) shall be made only from the aggregate assets of the Trust constituting the Participant Account(s) attributable to such Employer's Employees, reduced in the sole and absolute discretion of the Trustee or Administrator for expenses, reserves and other amounts, including without limitation those described in section 9.02 (c).

(d)   Nothing herein shall be interpreted to require distribution under section 9.02(b) of forfeitures or other amounts classified by the Trustee or Plan Administrator as surplus, unallocated experience gains or losses for the benefit of the entire Trust. Any demutualization proceeds, payments, or amounts are to be classified as separate surplus, never allocated for the payment of benefits. The determination of amounts distributable hereunder by the Trustee or Plan Administrator shall be final, in its sole and absolute discretion, regardless of whether any person might find the decision of the Administrator unreasonable.

(e)   Nothing herein shall be interpreted or applied to cause this Plan to be administered or operated in a manner constituting prohibited "experience rating" with respect to an Employer, as that term is used in section 419A(f)(6) of the Code and the regulations thereunder.

Section 9.03(d) of the Plan is amended to read as follows:

(d)   In the event the Employer adopts amendments to its benefit structure, no such amendments shall be effective unless and until they are approved by the Administrator, which approval may we withheld in the sole and absolute discretion of the Administrator regardless of its motivation. If any are inconsistent with the Plan, Trust, or the Adoption Agreement, this Employer's Plan shall no longer be considered an arrangement related to the Plan under the Trust, but shall be considered an individually designed Plan without any funding.

V.     ACCOUNTS - Article 8 of the Plan is deleted and replaced as follows:

### ALLOCATION AND VALUATION

Section 8.01  Participant Accounts. The Committee may establish and maintain an Account for each Participant under the Plan for purposes of accounting only, without any intention to create any vested right. Each Participant's Account may be further divided

into separate subaccounts, as otherwise determined by the Administrator to be necessary or appropriate for proper Plan administration. A Participant's Account shall be determined in the sole and absolute discretion of the Administrator. In the event an Account contains an insurance contract, it shall be valued at $1.00, and that value shall be final for all purposes hereunder.

Section 8.02  An Account is a basis for measurement and is not property

Section 8.03  An Account may include a reserve for Post-Retirement benefits, where applicable.

Section 8.04  Regardless of accounting treatment, amounts in the Trust Funds shall be deemed set aside for the payment of benefits and expenses and costs of administration, as determined and allocated by the Administrator in its sole and absolute discretion.

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

The July 29, 2009 Amendment of Trust and Incorporated Plan Documents effective April 7, 2009 is conformed for typographical errors as follows:

## REGIONAL EMPLOYERS' ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION AND SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST

### Sponsored by PennMont Benefit Services, Inc.

### AMENDMENT OF TRUST AND INCORPORATED PLAN DOCUMENTS

VI.    MISCELLANEOUS - Article 10 of the plan is hereby amended to add the following:

### MISCELLANEOUS

Section 10.23   Unsecured General Creditors. Participants and their Beneficiaries, heirs, successors, and assigns shall have no legal or equitable rights, claims, or interests in any specific property or assets of the TRUST ESTATE by virtue of participating or benefiting from the Trust Fund. No assets of the TRUST ESTATE shall be held in any way as collateral security for the fulfilling of the obligations of the TRUST ESTATE under this Plan. Any  and all of the TRUST ESTATE'S assets shall be, and remain, the general unpledged, unrestricted assets of the TRUST ESTATE. The obligations under the Plan shall be merely that of an unfunded and unsecured promise of to pay money in the future, and the rights of the Participants and Beneficiaries shall be no greater than those of unsecured general creditors.

Section 10.24   Arbitration - Each Participant, Participating Employer, Beneficiary, and the Trustees of the Trust Fund hereby agrees to submit any appeal  from an adverse decision of the Trustees or Administrator to an arbitrator. Any arbitration request shall include, as a mandatory part thereof, any assertions of any  claims under any federal or state law arising  with reference to the claimant's association or participation with any plan or trust arrangement of the Administrator, its employees, officers, agents, attorneys, directors successors and assigns. The Arbitration may be pursued under supervision of the American Arbitration Association in accordance with the rules of its "Employee Benefit Plan Claims" arbitration rules, or such public or private alternate dispute resolution ("ADR") forum as the Administrator shall employ.  Any Participant, Participating Employer or Beneficiary whose claim has been denied may initiate arbitration under said rules provided that such proceeding is commenced by a written letter to any office of the Plan Administrator, and the administrator of Arbitration within sixty (60) days following receipt from the Trust Fund of the decision reached by the Administrator. The request for arbitration must be accompanied by a copy of the denial of claim form, where available, and a filing fee payable to the designated ADR forum. The ADR forum will then provide the claimant with a copy of its rules and the arbitration shall be conducted in accordance therewith. The arbitration shall be conducted at such place and time

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

designated by the ADR forum. The arbitrator shall give deference to the Administrator's benefit eligibility decision and any interpretation of the Plan's terms upon which the decision was based. The arbitrator may overturn the Administrator's decision only if the Administrator's interpretation of the Plan's terms was arbitrary and capricious, notwithstanding the existence of any actual or alleged conflict of interest. The Trustees, Participants, Beneficiaries and Employers who are the subject to the Plan are bound by the decision of the arbitrator; and the arbitrator's decision may be recorded in any court of competent jurisdiction as a judgment. This arbitration provision applies to any claim at law or equity. Venue shall be in Montgomery County, Pennsylvania or such other location chosen by the Administrator. No arbitration shall occur if the claimant does not pay the fee assessed for ADR in advance.

Section 10.25   Protective Filing. Notwithstanding any provision for arbitration or alternative dispute resolution, the Trustee or Administrator shall be permitted to file a writ of summons, and other appropriate documents, in a court of the Commonwealth of Pennsylvania to vest jurisdiction and venue involving any matter arising under the Plan and Trust. It is the intention of this provision that the Trust Fund and its fiduciaries and delegates shall not be required to engage in legal action elsewhere, and shall be protected to the fullest degree from an inconvenient forum in the event any party attempts to employ a court to litigate a claim arising under the Plan and Trust or any applicable law. No protective filing shall be considered a waiver of the administrative process or mandatory arbitration contemplated by this Plan and Trust. The Court of Common Pleas shall, notwithstanding arbitration, issue orders and writs necessary to bind witnesses and parties, including enforcement of discovery orders, and orders for sanctions, as if the arbitration were an actual court proceeding. The failure of any party potentially benefiting hereunder from filing a claim within one year of an event entitling him or her to a benefit shall be deemed a waiver thereof, and this provision shall be interpreted as a statute of repose.

# EXHIBIT 3

# MASTER TRUST AGREEMENT

# REGIONAL EMPLOYERS ASSURANCE LEAGUES

# VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION

## REGIONAL EMPLOYERS ASSURANCE LEAGUES, SETTLOR

## COMMUNITY TRUST COMPANY, TRUSTEE

**Date of Trust:**
**March 20, 1995**

**AMENDED and RESTATED**
**MARCH 18, 2002**

Agreement and Declaration of Trust made as of the 20th day of March, 1995, as amended and restated on this 18th day of March 2002, by and between the REGIONAL EMPLOYER ASSURANCE LEAGUES, INC. ("REAL"), a non-profit corporation formed under and pursuant to the laws of the Commonwealth of Pennsylvania, and Community Trust Company, a trust company chartered by the Commonwealth of Pennsylvania (hereinafter "Trustee").

## WITNESSETH:

WHEREAS, REAL has established or will establish Chapters based upon employment-related common bonds in various geographic locales in the United States; and

WHEREAS, each of the Adopting Employers has become a member of a Chapter of REAL by virtue of executing an application and satisfying other prerequisites for membership; and

WHEREAS, each Chapter of REAL sponsors a Voluntary Employees' Beneficiary Association Plan ("VEBA" or "the Plan") in the form which is attached hereto as Exhibit "A"; and

WHEREAS, the Adopting Employers have heretofore adopted or will adopt the VEBA for the Chapter of REAL in which each has membership, the purpose of which is to provide life, sickness, accident and other benefits, as selected by each Adopting Employer in its Adoption Agreement, for those eligible employees and non-employees of the respective Adopting Employer covered by the Plan after meeting service and other requirements described in the Plan; and

WHEREAS, the League has appointed Penn-Mont Benefit Services, Inc. ("Plan Administrator") as contractor for plan administration services and each Adopting Employer has appointed an Advisory Committee, as defined herein; and

WHEREAS, the Plan Administrator and the Advisory Committee have responsibility for administering the Plan and the claims made thereunder; and

WHEREAS, the Plan Administrator and the Advisory Committee. intend that the trust established hereby when taken together with the Plan and the Adoption Agreements shall constitute Voluntary Employees' Beneficiary Association(s) under §501(c)(9) of the Internal Revenue Code of 1986, as amended, and the regulations issued thereunder; and

WHEREAS, the Trustee will hold the funds contributed to it by the League in a fiduciary capacity for the benefit of all Employees covered under the Plan; and

NOW THEREFORE, the Trustee hereby declares that it will hold all money and property received or purchased by it hereunder, IN TRUST, upon the following terms and conditions:

## ARTICLE I
### DEFINITIONS

1.1     "Adopting Employer" or "Adopting Employers" shall mean the employer, singularly, or employers, collectively, which have executed a Consent To Be A Party to Trust Agreement. Any Adopting Employer shall include its successor, and any member of the controlled group of companies, common control group, or affiliated service group, as those terms are defined in the Code, to the extent deemed by the Code to be component parts of a single employer for purposes of determining the tax qualification of a welfare benefit plan.

1.2     "Adoption Agreement" shall mean that document executed by the Employer wherein said Employer consents to be a Party to the Trust, ratifies the Plan and Trust Documents, and agrees to be bound thereby.

1.3     "Advisory Committee" shall mean, with respect to the Plan, the committee or other Person with fiduciary responsibility for benefit administration under the Plan, who shall have such authority solely in the event that no plan administrator is in office, and shall include any representative (designated in writing as such) or delegee thereof authorized to act on behalf of the Advisory Committee.

1.4     "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the regulations and rulings issued thereunder.

1.5     "Consent to be a Party to Trust Agreement" shall mean the exhibit annexed hereto as a part hereof, signed

by the Employer.

1.6   "Trustee" shall mean Community Trust Company, or its successor, as trustee under this Trust.

1.7   "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time, and the regulations and rulings issued thereunder.

1.8   "Insurance Contract" shall mean any contract or policy (including annuity contract) of any kind issued by an insurance company, whether or not providing for the allocation of amounts received by the insurance company thereunder solely to its general account or solely to one or more separate accounts, or a combination thereof, and whether or not any such allocation may be made in the discretion of the insurance company.

1.9   "Investment Fund" or "Investment Funds" shall mean all assets or monies held in the Trust Fund from time to time, including interest bearing deposits of the Trustee, but shall be otherwise limited to regulated investment companies made available by the Trustee, including any such regulated investment companies to which the Trustee or any of its affiliates may provide services in any capacity or capacities, such as investment advisor, custodian, transfer agent, registrar, sponsor, administrator, distributor and/or manager. It is understood and agreed that, to the extent permitted by law, the Trustee and its affiliates may receive compensation from such investment companies for the services provided, including compensation based upon the amount of assets in such investment companies, in addition to the compensation payable hereunder.

1.10   "League" shall mean REAL or the Chapter of REAL through which an Adopting Employer obtains the privilege to adopt the Plan.

1.11   "Person" shall mean a natural person, trust, estate, the Adopting Employer or any other corporation of any kind of purpose, mutual company, joint-stock company, unincorporated organization, association, partnership, employee organization, committee, board, participant, beneficiary, trustee, partner, or venturer acting in an individual, fiduciary or representative capacity, as the context may require.

1.12   "Plan" shall mean the REAL VEBA established by each Chapter of REAL pursuant to this Trust Agreement and adopted by each Adopting Employer.

1.13   "Plan Administrator" shall mean Penn Mont Benefit Services, Inc., or its successor and their affiliates, which has been appointed the Named Fiduciary, as that term is defined in ERISA.

1.14   "Plan Year" shall mean, with respect to the first Plan Year, the period of time beginning on the date which the Plan is adopted and ending on the first December 31 thereafter. With respect to all remaining Plan Years (other than the last Plan Year), the Trust's accounting year shall be twelve (12) months commencing on each January 1 and ending the following December 31.

1.15   "Trust" shall mean the fiduciary relationship establishing hereunder with respect to the Trust Fund.

1.14   "Trust Agreement" shall mean this REAL VEBA Trust Agreement, as set forth herein and as subsequently amended pursuant to Section 9.1.

1.15   "Trust Fund" shall mean all property received by the Trustee hereunder, together with income thereon, but shall exclude any property properly disbursed by the Trustee.

1.16   "Valuation date" shall mean at least once per calendar quarter for reporting and/or investment purposes.

1.17   "Employee" shall mean a person eligible to participate in the REAL VEBA, pursuant to Code section 501(c)(9) and Treasury Regulations and case law interpreting same, by virtue of a business relationship with the Adopting Employer, notwithstanding the existence or non-existence of a statutory or common-law employment relationship.

## ARTICLE II
### PURPOSE AND POLICIES

2.1   Purpose.   This trust is established in connection with a voluntary employees beneficiary association pursuant to Section 501(c)(9) of the Code and a Ten-Or-More-Employer plan in accordance with Section 419A(f)(6) of the Code for

the purpose of receiving contributions of the Adopting Employers and their employees to provide for life, sick, accident or other benefits and distributing benefits to the employees and beneficiaries hereunder or payment of insurance premiums or making such other similar payments pursuant to the terms of the Plan. All contributions, and all assets and earnings of the Trust are solely the net earnings of the Trust and shall not in any manner whatsoever inure to the benefit of any person other than a Person designated as an employee or beneficiary of an Adopting Employer under the terms of the Plan.

        2.2     Establishment of Trust Fund. The Trust Fund shall be held by the Trustee in trust and dealt with in accordance with the provisions of this Trust Agreement.

        2.3     Exclusive Benefit. Except as may otherwise be permitted by law or as set forth in Article IX of this Trust Agreement, at no time prior to the satisfaction of all liabilities with respect to employees of the Adopting Employers and their beneficiaries under the Plan shall any part of the Trust be used for, or diverted to, any purpose other than for the exclusive benefit of such employees and their beneficiaries, and for defraying the reasonable expenses of administering such Plan.

        2.4     Effect. All Employees at any time interested in the Plan shall be bound by the provisions of this Trust Agreement and, in the event of any conflict between this Trust Agreement and the provisions of the Plan or any instrument or agreement forming part of such Plan other than this Trust Agreement, the provisions of the Trust Agreement shall control.

        2.5     Domestic Trust. The Trust Fund shall at all times be maintained as a domestic trust in the United States.

### ARTICLE III
### ADMINISTRATION OF PLAN

        3.1     Payment of Benefit. At the direction of the Plan Administrator, the Trustee shall pay such portion of the Trust Fund as the Plan Administrator shall direct, to be paid directly to or for the benefit of Employees of the Adopting Employers and their beneficiaries. Any monies disbursed or paid over by the Trustee pursuant to this Section 3.1 shall no longer be part of the Trust.

        3.2     Participant Records and Accounts. The Trustee shall not be required to maintain any participant records or accounts and shall not be responsible for any allocation of contributions.

        3.3     Reliance on Plan Administrator. Any directions pursuant to Section 3.1 may, but need not, specify the application to be made of monies so ordered. Each direction to the Trustee under Section 3.1 shall constitute a representation and warranty by the Adopting Employers, the Advisory Committee., and the Plan Administrator that such direction is in accordance with applicable law, the Plan and this Trust Agreement. The Trustee shall have no duty to make any independent inquiry or investigation before acting upon such direction, or to see to the application of any monies so paid over.

        3.4     Trustee Not Responsible for Plan Administration. The Trustee shall not be responsible under this Trust Agreement, or otherwise, in any way respecting the determination, computation, payment or application of any benefit, for the form, terms, payment provisions or issuer of any Insurance Contract, for performing any functions under any such Insurance Contract which it may be directed to purchase and/or hold as contract holder thereunder (other than the execution of any documents incidental thereto and transfer or receipt of funds thereunder upon direction of the Plan Advisory Committee. or Plan Administrator), or for any other matter affecting the administration of the Plan by the Adopting Employers, Advisory Committee., Plan Administrator or any other Person to whom such responsibility is allocated or delegated pursuant to the terms of the Plan.

        3.5     Trustee Not Responsible for Enforcing Contributions or for Sufficiency or for Obligations Not Specifically Undertaken. The Trustee shall have no responsibility for enforcing payment of any contribution to the Plan for the timing or amount thereof nor for the adequacy of the Trust Fund nor any part thereof nor the funding policy adopted for the Plan to meet or discharge any liabilities of the Plan. No duties or obligations shall be imposed upon the Trustee with respect to the trust by the Plan nor any other instrument to which the Trustee is not a party, unless they have been specifically undertaken by the Trustee pursuant to the express terms of this Trust Agreement.

        3.6     Effect on Adopting Company. The Trustee shall be fully protected by the Adopting Employer in relying upon the decisions, instructions, actions and direction of the Advisory Committee. or Plan Administrator.

3.7     Tax Returns and Reporting Requirements. The Plan Administrator shall be responsible for withholding on distributions to employees of the Adopting Employers and their beneficiaries and the preparation of forms associated with such distributions. The Plan Administrator shall not be responsible for any other tax reporting or withholding, including tax returns required by federal, state or local taxing or governing authorities.

## ARTICLE IV
## DEPOSITS AND WITHDRAWALS

4.1     Deposits and Withdrawals  No deposit to or withdrawal from the Trust shall be permitted by the Plan unless said deposit or withdrawal is made in accordance and on the basis prescribed in Section 4.2 and 4.3 hereof.

4.1a.     Division into Chapter Trusts.  The Plan Administrator shall maintain an accounting of the Trust Fund for each Chapter of REAL.

4.2     Deposits.  The Trustee shall receive contributions into the Trust Fund which shall be made only in cash or in the form of such other property as the Trustee may deem acceptable and hold the same uninvested until applied to the purposes of this Trust as directed by the Plan Administrator. The Trustee shall, at the direction of the Plan Administrator, use and apply the assets comprising the Trust fund for the following purposes:

(a)  To provide and/or otherwise arrange for the payment of all premiums, benefits and services to which, and on behalf of which, Plan participants and beneficiaries are entitled pursuant to the terms of the Plan;

(b)  To provide and/or otherwise arrange for the payment of all reasonable and necessary expenses incurred in enforcing the rights of the Trust;

(c)  To provide for the administration of the Trust Fund in accordance with the direction from the Plan Administrator.

4.3     Withdrawals and Transfers.  Withdrawals from the Trust Fund for premium payment purposes may be made upon at least on (3) business day's advance written notice by the Plan Administrator to the Trustee, and transfers among investment Funds may be made upon at least on (1) business day's advance written notice by the Plan Administrator to the Trustee.

4.4     Separate Accounting.  The Plan Administrator shall divide all or a portion of the assets of the Trust Fund among separate accounts representing aggregate balances in the Trust Fund allocable to employees of each Adopting Employer (the "Account"). The Trustee shall have no obligation to account for said subdivision. In the event of such division and for the period of time such division remains in effect, the assets allocable to any Account shall be segregated by the Plan Administrator within the Trust Fund for purposes of accounting, although such allocation shall not operate to limit the liability of the Trust Fund for benefits payable hereunder. Each Account shall be credited or charged by the Plan Administrator with its share of the earnings, gains, losses and expenses of the Trust Fund, and shall be charged for all benefit payments made pursuant to the Plan until such Account is exhausted, whereupon such benefit payments shall be charged against the remainder of the Trust Fund by the Plan Administrator. All credits and charges described in this paragraph shall be determined by the Plan Administrator in its discretion, and not by the Trustee, on the basis of reasonable, nondiscriminatory standards consistently applied. Notwithstanding the foregoing, the division of the Trust Fund into Accounts by the Plan Administrator pursuant to this Section 4.4 shall not be deemed to prevent a subsequent reallocation of the amounts credited to any such Account, to another of such Account, or the elimination of such segregation, except as may be separately required by ERISA or the Code. This Section shall be applied consistent with Treasury Regulation 1.414(l)-1(b)(1) and such allocation of the Trust Fund or the separate accounting described herein shall not operate to prevent any portion of the Trust Fund from being available for the payment of any claim arising under the Plan.

4.5     Employer Ineligibility.  To the extent not inconsistent with the terms of this Trust or the Code, in the event an Adopting Employer becomes ineligible, either voluntarily or involuntarily, to participate in the Trust, the Plan Administrator shall segregate the Trust Fund allocable to the Account of the Adopting Employer's employees, and the Trustee shall dispose of such assets as directed in writing by the Plan Administrator. The Trustee shall have no obligation regarding the enforcement of this provision other than to dispose of such assets as directed by the Plan Administrator.

4.6     Diversion of Earnings Prohibited.  No part of the net earning of the Trust may inure to any Person other than through the payment of benefits or compensation described in the Plan. Title to the Trust Fund shall be vested in and

remain exclusively in the Trustee and neither the Adopting Employer, Advisory Committee Plan Administrator, nor any employee, or his or her decedents or beneficiaries shall have any right, title or interest therein or thereto. Participation in the Plan and this Trust shall not give any employee, beneficiary or any other Person, any right or interest in the Plan or this Trust other than as herein provided. All benefits payable under the Plan shall be provided solely from the Trust and the Trustee assumes no responsibility for the adequacy of the Trust Fund to pay all such benefits.

## ARTICLE V
## POWERS AND DUTIES OF TRUSTEE

5.1     Powers of the Trustee.  In furtherance of the powers otherwise specified herein or conferred upon the Trustee by law, the Trustee shall be vested with the following powers and discretion with respect to the assets of the Trust:

(a) to purchase or otherwise acquire property for the Trust and to sell, exchange, convey, transfer or otherwise dispose of units of certificates issued by an Investment Fund;

(b) to transfer money or other property to an insurance company issuing an Insurance Contract to the extent it is part of the Investment Fund;

(c) to hold part of said Trust Fund uninvested, while such amounts are awaiting distribution;

(d) to vote upon any securities held by the Trust;

(e) to exercise generally any of the powers of an owner with respect to securities held in the Trust;

(f) to make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted, or to delegate authority for same;

(g) to settle, compromise or abandon all claims and demands in favor of or against the Trust;

(h) to bring, join in, or oppose any suits or legal proceedings involving the Trust Fund where the Trustee may be adversely affected by the outcome, individually or as trustee, or where it is advised by counsel that such action is required on its part by ERISA or other applicable law;

(i) to employ suitable agents, advisors, and counsel and to pay their reasonable expenses and compensation as expenses of the Trust Fund; and

(j) to do all other acts (exclusive of acts otherwise committed to the discretion of the Adopting Employers, Advisory Committee., Plan Administrator) which in the judgment of the Trustee are necessary or desirable to carry out the duties expressly conferred upon it by this Trust Agreement for the proper administration of the Trust even though the power to do such acts is not specifically set forth herein.

5.2     Trustee Not Responsible for Investment in Trust Fund.  The Trustee has agreed to accept the trust subject to the conditions and limitations of this Trust Agreement.  The Trustee has agreed to invest and reinvest the Trust Fund, without distinction between the principal and income, in such securities as are permitted by this agreement as the Trustee deems advisable; provided however that such investments shall be so diversified as to minimize the risk of large losses, unless under the circumstances it is clearly prudent to do so.  The Trustee shall not assume any responsibility nor be liable for collection, remittance, forwarding or payment of premiums from the Trust or for the continuation of coverage, to apply for or obtain renewals therefor, to such contract, Insurance Contract or any insurance company issuing such contract, or to replace same in the event of cancellation or termination thereof, nor shall it have any duties or responsibilities with respect to the payment, settlement, processing or presentment of claims, other than to make payments and distributions as directed by the Plan Administrator, but shall be otherwise limited to regulated investment companies made available by the Trustee, including any such regulated investment companies to which the Trustee or any of its affiliates may provide services in any capacity or capacities, such as investment advisor, custodian, transfer agent, registrar, sponsor, administrator, distributor and/or manager.  It is understood and agreed that, to the extent permitted by law, the Trustee and its affiliates may receive compensation from such investment companies for the services provided, including compensation based upon the amount of assets in such investment companies, in addition to the compensation payable hereunder.

5.3     Reliance on Plan Administrator or Advisory Committee.     The Trustee shall execute documents, settle transactions, take action on behalf of or in the name of the Trust and make and receive all payments, on the direction of an authorized representative of the Plan Administrator or Advisory Committee. Any direction of the Plan Administrator or Advisory Committee., shall constitute a representation and warranty to the Trustee:

(a) that the transaction will not constitute a prohibited transaction under ERISA or the Code;

(b) that the investment is authorized under the terms of the Plan, this Trust Agreement, and any other agreement or law affecting the authority of the Plan Administrator or Advisory Committee ( to the extent defined at 1.2) to deal with the Trust Fund;

(c) that any contract, agency, joinder, adoption, participation or partnership agreement, deed, assignment or other document of any kind which the Trustee is requested or required to execute to effectuate the transaction has been reviewed by the Adopting Employer, Advisory Committee., and Plan Administrator and, to the extent they deem advisable and prudent, their counsel;

(d) that such instrument or document is in proper form for execution by the Trustee;

(e) that, where appropriate, insurance protecting the Trust against loss or liability has been or will be maintained in the name of or for the benefit of the Trustee; and

(f) that all other acts to perfect and protect the Trust's rights have been taken, and the Trustee shall have no duty to make any independent inquiry or investigation as to any of the foregoing before acting upon such direction.

In addition, the Trustee shall not be liable for the default of any Person with respect to any investment in the Trust Fund or for the form, genuineness, validity, sufficiency or effect of any document executed by, delivered to or held by it for any Investment Fund on account of such investment, or if for any reason (other than the negligence or willful misconduct of the Trustee) any rights of the Trust therein shall lapse or shall become unenforceable or worthless.

5.4     Request for Instructions.     The Trustee may, by written request, seek instructions from the Plan Administrator on any matter and may await the written instructions from the Plan Administrator without incurring any liability whatsoever. If at any time the Plan Administrator should fail to give direction to the Trustee, the Trustee may act and shall be protected in acting without such direction in such manner as the Trustee deems appropriate under the circumstances for carrying out the purposes of this Trust.

5.5     Avoidance of insurance company status.     Notwithstanding any other provision of this Trust Agreement, the Trustee shall not invest in any security, Contract, account or other investment vehicle which would cause the Plan not to be considered "fully insured" within the meaning of ERISA Section 514. The obligation of the Trustee under this provision shall be discharged upon acting in reliance on the advice of counsel for the Plan Administrator, whose decision shall prevail.

5.6     Nondisclosure.     Except for the required disclosures to the Plan Administrator, Adopting Employers, or Participants set forth in this Trust and the Plan, under no circumstances shall the Trustee make any disclosure to any person, corporation, entity or any information or data relating to the identify of participants, Adopting Employers, and/or contributions of same to this Trust.

## ARTICLE VI
## ACCOUNTING

6.1     Valuation of Shares.     The shares of the investment funds purchased by the Trust shall be valued by the Trustee at the value assigned to them on any given date by their issuer.

6.2     Records.     The Trustee shall keep accurate and detailed accounts at its principal place of business of all investments, receipts, disbursements and other transactions in the Trust and all accounts, books and records relating thereto shall be open to inspection and audit at all reasonable times during normal business hours by the Adopting Employer or Plan Administrator's certified public accountant.

6.3     Annual Accounting. Within ninety (90) days following the close of each Plan Year, the Trustee shall file with Plan Administrator a written account setting forth the receipts and disbursements of the Trust and the investments and other transactions effected by it upon directions of authorized representatives of the Plan Administrator or Adopting Employer during the Plan Year.

6.4     Account Stated. Upon the expiration of (90) ninety days from the date of filing its annual account with the Plan Administrator, the Trustee shall be forever released and discharged from all liability and further accountability to the Adopting Employers, Advisory Committee., Plan Administrator or any other Person with respect to the accuracy of such accounting and the propriety of all acts and failures to act of the Trustee reflected in such account.

6.5     Judicial Accounting. Nothing herein shall in any way limit the Trustee's right to bring any action or proceeding at the expense of the Trust in a court of competent jurisdiction to settle its account or for such other relief as it may deem appropriate.

### ARTICLE VII
### COMPENSATION, EXPENSES AND LIABILITY

7.1     Trustee's Compensation and Expenses. Compensation to the Trustee shall be as set forth in writing by agreement between the Trustee and Plan Administrator. Any expenses incurred by the Trustee in connection with its administration of the Trust including, but not limited to, fees for legal services rendered to the Trustee (whether or not rendered in connection with a judicial or administrative proceeding) such compensation as set forth in the fee schedule agreed in writing by the Trustee and the League and communicated to Plan Administrator and all other proper charges and disbursements of the Trustee shall be paid from the Trust unless first paid by an Adopting Employer. Administrative Trustee Fees shall begin following acceptance of this Trust, and shall be billed annually on the anniversary of this Agreement. Trustee fees shall be billing annually by the Plan Administrator, and the fees shall not be charged to the Trust Fund until the Plan Administrator has completed efforts to collect same directly from the Adopting Employer. Asset Allocation Fees shall be billed annually with monthly adjustments and shall be based on the average assets valuation per annum. Anything in the preceding sentence to the contrary notwithstanding, the Adopting Employers shall reimburse the Trustee for any such fees and expenses if for any other reason such expenses are not paid out of the Trust. Fees and reimbursement will not be affected by removal or by termination of the Trust, however, in such event, fees will be prorated, and any unearned portion shall be returned.

7.2     Plan Expenses. With respect to expenses incurred by Persons other than the Trustee, the Plan Administrator may direct the Trustee to pay from the Trust any other administration expenses of the Plan. Each direction to the Trustee under this Section shall constitute a representation and warranty by the Adopting Employer, Advisory Committee., and Plan Administrator that such direction is in accordance with applicable law, the terms of the Plan, and the terms of this Trust Agreement, and the Trustee shall have no duty to make any independent inquiry or investigation as to any of the foregoing before acting upon such direction or to see to the application of any monies paid over.

7.3     Taxes. All taxes of any and all kinds whatsoever that may be levied or assessed under existing or future laws, domestic or foreign, upon the Trust or the income thereof shall be paid from the Trust, or if the Trust does not contain sufficient assets, from the Adopting Employers. The Trustee shall notify the Plan Administrator of any taxes that may be assessed. In the event that the Plan Administrator shall determine that the taxes are not lawfully assessed, it may elect to direct the Trustee to contest same at the expense of the Trust or may itself contest such assessment.

7.4     Legal Actions. To the extent not otherwise required by ERISA, the Trustee shall not be required to institute any legal action or to appear or participate in any legal action to protect or preserve the property of the Trust, or its title thereto, unless the Trustee is in possession of assets in the Trust sufficient for the payment of, or shall have first been indemnified to its satisfaction from all loss, cost and liability related thereto, provided, however, that this provision shall not be construed so as to require anyone to indemnify the Trustee from expenses or liabilities as to any suits or proceedings against the Trustee if not required to do so in accordance with Section 7.5 hereof.

7.5     Indemnification of Trustee. In consideration of the Trustee agreeing to enter into this Agreement, the League, the Plan Administrator and Adopting Employers hereby agree to indemnify and hold harmless the Trustee, individually and as Trustee, and the Trustee's parent and affiliates and each of their directors, officers, employees, subsidiaries and agents ("Indemnified Parties") from and against all amounts, including without limitation taxes, expenses (including reasonable counsel

fees), liabilities, claims, damages, actions, suits, or other charges, incurred by or assessed against each Indemnified Party ("Claims"), in advance, unless it is alleged and until it is conclusively determined that such Claims arise from the Trustee's own negligence or willful breach of its obligations specifically undertaken pursuant to this Agreement.

       7.6      Survival of Undertakings. The Adopting Employers further agree that the undertakings made in this Article VII shall be binding on its successors or assigns and shall survive termination, amendment or restatement of this Trust Agreement, or the resignation or removal of the Trustee, and that this Article shall be construed as a contract between the Adopting Employer and the Trustee according to the laws of the Commonwealth of Pennsylvania in effect from time to time.

       7.7      Settlement of Disputes. In the event that any controversy should arise between the Trustee and the League, Plan Administrator, Adopting Employer, Advisory Committee., employee or beneficiary under the Plan and/or any other Person with respect to the payment or delivery by the Trustee of any monies it holds hereunder, with respect to the proper construction of this Trust Agreement or of any amendment hereto, or the proper construction of the Plan or any amendment thereto, the Trustee shall not be obligated to determine such controversy at its peril but may insist that such controversy be determined by a court of competent jurisdiction; and the Trustee shall not be obligated to make payment or delivery of such monies or other property or to take any other action in connection with the matter in controversy until a final adjudication of such controversy shall have been made by a court of competent jurisdiction.

## ARTICLE VIII
### Resignation or Removal of Trustee

       8.1      Resignation or Removal. The Trustee may be removed by the League at any time upon ninety (90) days notice in writing to the Trustee. The Trustee may resign at any time upon ninety (90) days notice in writing to the League.

       8.2      Designation of a Successor. Upon the removal or resignation of the Trustee, the termination of the Trust or a termination of the Trust Agreement as described in Section 9.2, or any event other than a complete termination of the Plan, the Plan Administrator shall appoint a successor trustee for the Plan which shall have the same powers and duties as those conferred upon the Trustee hereunder and upon acceptance of such appointment by the successor trustee, the Trustee shall assign, transfer and pay over the Trust or part thereof, as the case may be, to such successor trustee. Resignation shall not be effectuated unless and until a successor trustee has been appointed by the Plan Administrator. Any expenses incurred by the Trustee in connection therewith shall be charged to and paid from the Trust as an expense of administration.

       8.3      Reserve for Expenses. The Trustee is authorized to reserve such amount as it may deem advisable for payments of its fees and expenses in connection with the settlement of its account or otherwise, and any balance of such reserve remaining after the payment of such fees and expenses shall be paid over in accordance with the directions of the Plan Administrator under Section 8.2.

## ARTICLE IX
### Amendment or Termination

       9.1      Amendment. Subject to the restrictions set forth in section 3.5 the League may at any time and from time to time amend, in whole or in part, any or all of the provisions of this Trust Agreement by notice thereof in writing delivered to the Trustee; provided, however:

       (a)  No amendment shall be effective which shall attempt to cause any of the assets of the Trust to be used for or diverted to purposes other than for the exclusive benefit of those covered under the Plan and no funds contributed to the Trust or any assets for the Trust shall ever revert to or be used or enjoyed by the Adopting Employers except as permitted under the Plan and applicable laws and regulations;

       (b)  No amendment shall have any retroactive effect so as to deprive any Person of any benefits already accrued;

       (c)  No amendment (including, for the purpose of this Section 9.1, any provision of the Plan, incorporated by reference in this Trust Agreement) which affects the rights, duties or responsibilities of the Trustee may be made

without its prior written consent.

9.2    Termination. Subject to the restrictions set forth in Section 3.5 the League may terminate this Trust Agreement by notice in writing thereof delivered to the Trustee, or in the event of disqualification under Section 10.2.

9.3    Trustee's Authority to Survive Termination. Until the final distribution of the Trust, the Trustee shall continue to have and may exercise all of the powers conferred upon it by this Trust Agreement.

## ARTICLE X
### Termination or Disqualification of Plan

10.1    Event of Termination. Upon receipt of notice from the League of the termination (including any partial termination) and distribution of the assets of the Plan, the Trustee shall dispose of such assets in accordance with the terms of this Trust Agreement, and directions of the Plan Administrator or Advisory Committee.

10.2    Disqualification. The League, Adopting Employers or Plan Administrator shall promptly notify the Trustee if the Plan has been or is likely to be disqualified under Section 419A(f)(6) of the Code.

10.3    Approval of Appropriate Agencies. The Trustee may, in its absolute discretion, condition delivery, transfer, or distribution of any assets upon the Trustee's receiving assurances satisfactory to it that any notice or other action which may be required to be given under ERISA or the Code to any Person, the Department of Labor or the Internal Revenue Service has been given or taken, as the case may be, and that any filing which is required to be made to determine that a termination has not affected the qualification of the Plan has been made. The Trustee shall not be responsible under the Plan to give any such notice, make any such filings, maintain any records required under ERISA or the Code or take any other action, all of which, for purposes of this Trust Agreement, shall be the responsibility of the Plan Administrator.

10.4    Trust as an Investment Company. This Trust is operated without registration under the Investment Company Act of 1940 ("1940 Act") and without registration of participation in the Trust under the Securities Act of 1933 ("1933 Act") on the expectation that the Trust is exempted by Section 3(c)(11) of the 1940 Act and by section 3(a)(2) of the 1933 Act. If it shall ever be determined that the Trust is not exempted from the requirements of the 1933 Act or the 1940 Act, including but not limited to 3(a)(2) of the 1933 Act or 3(c)(11) of the 1940 Act, the Trust shall be deemed terminated.

10.5    Additional Indemnification For Disqualification. In addition to and without anyway limiting the indemnification set forth in Article VII, the League, Adopting Employers and Plan Administrator hereby agree to indemnify and hold harmless the indemnified Parties from and against all Claims arising out of the Plan's failure to obtain a determination letter from the Internal Revenue Service, the failure of the Plan to be or remain qualified, or a determination that the Trust is an Investment Company as set forth in Section 10.4 or otherwise subject to the 1933 Act or 1940 Act.

## ARTICLE XI
### Authorities

11.1    Adopting Employer. Whenever the provisions of this Trust Agreement specifically require or permit any action to be taken by "the Adopting Employer", such action must be authorized by the (a) Board of Directors or authorized by a Person authorized to take such action by the Board of Directors if the Adopting Employer is a corporation; (b) partners or a Person authorized to take such action on behalf of the Partnership if the Adopting Employer is a partnership; or (c) sole proprietor, any resolution adopted by the Board of Directors or other evidence of such authorization shall be certified to the Trustee by the Secretary or an Assistant Secretary of the Adopting Employer under seal, and the Trustee may rely upon any authorization so certified until revoked or modified by a further action and similarly certified to the Trustee.

11.2    League Plan Administrator and Advisory Committee. Unless otherwise specifically provided in this Trust Agreement, the League shall furnish the Trustee from time to time with a list of the names and signatures of all other Persons (other than Participants) authorized hereunder:

(a) to receive accounting under Article VI;

(b) to act on behalf of the League;

(c) to act as Plan Administrator;

(d) who are members of any Advisory Committee; or

(e) who are in any manner authorized to issue orders, notices, requests, instructions and objections to the Trustee pursuant to the provisions of this Trust Agreement.

Any such list and the form of the instructions shall be certified to the Trustee by the Secretary or an Assistant Secretary of the League and may be relied upon for accuracy and completeness by the Trustee. Each such Person shall thereupon furnish the Trustee with a list of the names and signatures of those individuals, if any, who are authorized, jointly or severally or otherwise, to act for such Person hereunder and the Trustee shall be fully protected in acting upon any notices or directions received from any of them.

11.3 Plan Administrator. Unless otherwise specifically stated in this Trust Agreement, the Trustee may take directions from the Plan Administrator in all matters relating to the Plan and shall be further fully protected in acting upon any notice or direction received from the Plan Administrator. Unless otherwise specifically stated in the notice or direction, notice or direction from the Plan Administrator shall be deemed to be notice or direction from the League.

11.4 Form of Communications. Any agreement or understanding between the Adopting Employer and Plan Administrator or any other provision of this Trust Agreement to the contrary notwithstanding, all notices, direction instructions and other communications to the Trustee shall be in writing or in such other form, including transmission by electronic means through the facilities of third parties or otherwise specifically agreed to in writing by the Trustee. The Trustee shall be fully protected in acting in accordance therewith, but shall not thereby assume responsibility for the failure or breakdown of any such means of communication not due to its own gross negligence or willful misconduct.

11.5 No Obligation to Act on Unsatisfactory Notice. The Trustee shall incur no liability under this Trust Agreement for any failure to act pursuant to any notice, direction or any other communication from the League, Plan Administrator, the Adopting Employer, the Advisory Committee., or any other Person or the designee of any of them unless and until it shall have received instructions in form specified in this Article XI.

11.6 Co-Fiduciary Liability. Each fiduciary under the Plan and under this Trust shall be solely responsible for his own acts or omissions. No fiduciary shall have any liability for a breach of fiduciary responsibility of another fiduciary with respect to such Plan and Trust unless it participates knowingly in such breach, has actual knowledge of such breach and fails to take reasonable remedial action to remedy said breach or, through its negligence in performing its own specific fiduciary responsibilities which give rise to its status as a fiduciary, it has enabled such other fiduciary to commit a breach of the latter's fiduciary responsibility.

## ARTICLE XII
### General Provisions

12.1 Governing Law. To the extent that state law shall not have been preempted by the provisions of ERISA or any other law of the United States heretofore or hereafter enacted, this Trust Agreement shall be administered, construed and enforced according to the laws of the Commonwealth of Pennsylvania.

12.2 Mistake. No mistake made in good faith and in the exercise of due care in connection with the administration of the Trust shall be deemed to be a breach of the Trustee's duties if, promptly after discovery of the mistake, the Trustee takes whatever action may be practicable in the circumstances to remedy the mistake.

12.3 Reliance on Experts. The Trustee may consult with experts (who may be experts employed by the League, Plan Administrator, or any Adopting Employer), including legal counsel, appraisers, pricing services, accountants or actuaries, selected by it with due care, with respect to the meaning and construction of this Trust Agreement or any provision hereof, or concerning its powers and duties hereunder, and shall be protected for any action taken or omitted by it in good faith pursuant to or on the basis of the opinion of any such expert.

12.4 Successor to the Trustee. Any successor, by merger or otherwise, to substantially all of the trust business of the Trustee shall automatically and without further action become the Trustee hereunder, subject to all the terms and

conditions and entitled to all the benefits and immunities hereof.

12.5     Notices. Except as otherwise provided in writing and agreed to by the Trustee, all notices, reports, accounts and other communications from the Trustee to the Adopting Employer, Plan Administrator, or any other Person shall be deemed to have been duly given if mailed, postage prepaid or delivered in hand to such Person at its address appearing on the records of the Trustee at the time of the establishment of the Trust and shall be kept current thereafter by the Plan Administrator. All directions, notices, statements, objections and other communications to the Trustee shall be deemed to have been given when received by the Trustee at its offices.

12.6     No Waiver; Reservation of Rights. The rights, remedies, privileges and immunities expressed herein are cumulative and are not exclusive, and the Trustee shall be entitled to claim all other rights, remedies, privileges and immunities to which it may be entitled under applicable law.

12.7     Descriptive Headings. The captions in this Trust Agreement are solely for convenience of reference and shall not define or limit the provisions hereof.

12.8     Spendthrift Provision. Except as may be required by law, no interest or claim of interest of any kind of any participant under the provisions of this Trust is assignable, nor may any such interest or claim be subject to garnishment, attachment, execution or levy of any kind, and no attempt to transfer, assign, pledge or otherwise encumber or dispose of such interest by act of the Person involved or by operation of law will be recognized.

12.9     Severability. The illegality or unenforceability of any provisions of this Trust Agreement or any instrument or agreement required hereunder shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Trust Agreement or any instrument or agreement required hereunder.

WHEREFORE, the parties hereto have executed this Trust Agreement, consisting of 13 pages [including this page] on the date first above written.

**COMMUNITY TRUST COMPANY**

By:     Lowell R. Gates, Esquire

Title:     Chairman

Attest:     _____

**THE REGIONAL EMPLOYERS ASSURANCE LEAGUES**

By:     John J. Koresko, Esquire

Title:     Attorney in Fact

Attest:     _____

ACKNOWLEDGED:

**PENN-MONT BENEFIT SERVICES, INC.**

By:     Lawrence Koresko

Title:     Vice President

Attest:     _____

## CONSENT TO BE A PARTY TO TRUST AGREEMENT

On this _____ day of _____, 20_____,
_____(NAME OF ADOPTING EMPLOYER), by its duly authorized officers or representatives, does hereby agree to become a party to that certain Trust Agreement dated the 20th day of March, 1995, as amended from time to time, known as The Regional Employers Assurance League Voluntary Employees' Beneficiary Association Trust (hereinafter the "Trust")., which is attached hereto and incorporated herein in its entirety.

The capitalized terms used herein shall be given the same meaning as set forth in the Trust.

On behalf of the Adopting Employer, the undersigned represents and warrants for the benefit of the Trust and the Trustee, the following:

(a) The Adopting Employer is the "employer" with respect to the Plan as defined in Section 3(5) of ERISA.

(b) The League has appointed Penn-Mont Benefit Services, Inc. as contractor for plan administrator services and record keeper of the Plan and has authorized Penn-Mont Benefit Services, Inc. to act on behalf of the League and Adopting Employer in communicating instructions to the Trustee.

(c) The Adopting Employer has full power and authority to execute, deliver and perform this Consent To Be A Party on behalf of itself and the Plan, and this Consent To Be A Party constitutes the valid and binding undertaking of the Adopting Employer and the Plan in accordance with its terms.

The Adopting Employer agrees to be bound by the terms of the Trust Agreement including, without limitation, the provisions regarding indemnification of the Trustee as set forth in Article VII and X of the Trust Agreement, which provisions are hereby expressly adopted by the Adopting of the Plan in the Trust pursuant to this Consent To Be A Party and to accept the designation of the Trustee as a trustee of the Plan.

The undersigned acknowledges that it has not relied on the Trustee for any investment or tax advice, or any advice regarding the Trust, including, but without limitation to any advice regarding the tax deductibility of contributions to the Trust, or upon tax qualification or continuing tax qualification of the Trust, or any investments therein, or upon the ultimate disposition of the Trust Fund. The Trustee's involvement in the Trust does not constitute an endorsement of the League or the benefits offered under the Plan.

The undersigned Adopting Employer has read the Trust Agreement, understands and acknowledges the terms and provisions contained therein, and agrees to be bound thereby.

ATTEST:

(NAME OF ADOPTING EMPLOYER)

_____
Secretary                         President

# EXHIBIT 4

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

# THE REGIONAL EMPLOYERS' ASSURANCE LEAGUES

# VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION

# HEALTH AND WELFARE BENEFIT PLAN

# ADOPTION AGREEMENT

## HARRY H. MONOKIAN, D.M.D., P.A.

Sponsored by:

**PENN-MONT BENEFIT SERVICES, INC.**

THE REGIONAL EMPLOYERS' ASSURANCE LEAGUES

VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION
HEALTH AND WELFARE BENEFIT PLAN

ADOPTION AGREEMENT

## TABLE OF CONTENTS

| SECTION | | PAGE |
|---|---|---|
| SECTION 1 | FUNDING | 1 |
| SECTION 2 | DEFINITIONS | 1 |
| SECTION 3 | ELIGIBILITY REQUIREMENTS | 1 |
| SECTION 4 | PARTICIPANTS' CONTRIBUTIONS | 2 |
| SECTION 5 | BENEFITS | 2 |
| | a. Limitations | 2 |
| | b. Benefit Base | 2 |
| | c. Life Benefits | 2 |
| | d. Other Benefits | 2 |
| SECTION 6 | SELF-EMPLOYED PARTICIPANTS - Limitations | 2 |
| SECTION 7 | BENEFIT INTEGRATION | 2 |
| SECTION 8 | PARTICIPATION AND BENEFIT DURATION | 3 |
| SECTION 9 | COMMITTEE | 3 |
| SECTION 10 | INVESTMENT DIRECTIONS TO THE TRUSTEE | 3 |
| SECTION 11 | CONSENT TO BE PARTY TO TRUST AGREEMENT | 4 |
| SECTION 12 | CERTIFICATE OF INTENTION AND UNDERSTANDING | 4 |

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

### VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION

### HEALTH AND WELFARE BENEFIT PLAN

#### For Employees of

### HARRY H. MONOKIAN. D.M.D., P.A.

### ADOPTION AGREEMENT

The undersigned Employer is a member of the Regional Employers Assurance League (hereinafter "League"). Region 2, Chapter A. Voluntary Employees' Beneficiary Association and hereby adopts the Voluntary Employees' Beneficiary Association Health and Welfare Plan and its companion Trust sponsored by the League by executing this Adoption Agreement and the provisions herein set forth herein on this _____ 15th _____ day of _____ October _____, 1995.

1. **FUNDING - §1.02**

   Initial Deposit: $1000.00

   Funding Policy: §4.01 and §4.04

      Fully Insured

2. **DEFINITIONS - §1.04**

   a. Plan Name: The Plan name shall be the HARRY H. MONOKIAN, D.M.D., P.A. Health and Welfare Benefit Plan.

   b. Trust Name: The Trust name is The Regional Employers Assurance League, Region 2, Chapter A. Voluntary Employees' Beneficiary Association Trust, as amended, which is incorporated herein by this reference.

   c. Administrator: PENN-MONT BENEFIT SERVICES, INC.

   d. Anniversary Date: December 31.

   e. Compensation: Excludes bonuses, overtime and commissions.

   f. Effective Date: January 1, 1995.

   g. Plan Year: The twelve (12) month period (January 1 to December 31) ending with the Anniversary Date each year.

   h. Trustee: COMMERCE BANK, N.A.

3. **ELIGIBILITY REQUIREMENTS - §3.01**

   The determination of eligibility shall be made in the following manner: Any Employee of the Employer (who has otherwise completed the requirements of paragraphs below) shall be eligible to participate in the Plan if he shall complete the required period of service, specified in "a" below, with the Employer, or if he shall complete the required period of service during any Plan Year which includes the Anniversary date of his employment with his Employer. A Month of Service shall mean a period of time one month in length, during which an Employee completes at least one Hour of Service, as defined in Section 3.04 of the Plan. "Employee" means those Employees whose customary employment is for 1,000 or more hours per year.

   a. Having served 36 months with the Employer. This Plan does not recognize service with a predecessor entity.

   b. Attained a minimum age of 21 years.

   c. Job Class: Those members of collective bargaining units with whom the matters of retirement provisions and health and welfare provisions have been the subject of good faith bargaining, shall be excluded from Participation in the Plan and Trust.

4. **PARTICIPANTS' CONTRIBUTIONS - §4.01(B)**

   Participants do not contribute under this Plan.

5. **BENEFITS - §5.01**

   a. **Limitations** - Anything herein to the contrary notwithstanding, the benefits are limited:

      (1) as provided in Plan Section 4.04, respecting evidence of insurability in insured plans.
      (2) as provided in Plan Section 6, respecting integration of this Plan with other Plans.
      (3) as provided in Plan Section 7, respecting benefit duration.

   b. **Benefit Base - §5.05**

      An Employee's Benefit Base shall be his compensation, with adjustments only as provided in Section 5.03. An Employee who has had less than twelve (12) Months of Service shall have a Benefit Base as if his current rate of compensation extended over twelve (12) months.

   c. **Life Benefits** - Limitations §5.02(a)

      Life benefits are provided as follows:

      1. Employee-Participants receive a life benefit equal to 5 times the Employee's Benefit Base.
      2. Spouse-Participants do not participate in Life benefits.
      3. Dependent-Participants other than spouses of Employees do not participate in Life benefits.

   d. **Other Benefits** - Limitations § 5.02(e)

      Severance benefit is provided as follows:

      1. **Definition**

         A Non-Key participant's "involuntary termination," (not retirement) defined as Lay-Off.

      2. **Limitations § 5.02**

         a. Severance Benefit is provided to Employee Participants at 30% of Benefit Base.
         b. Severance Benefit payout is payable in 23 equal monthly installments beginning one month after termination.

   **Service Provisions for Severance Benefit - § 5.29(a)**

      1. Severance Benefits under the Plan shall be calculated according to the following schedule:

| | Completed Years of Services | Percentage of Benefit |
|---|---|---|
| Seven-Year | less than three (3) | 0% |
| Graded | three (3) but less than four (4) | 20% |
| Benefit | four (4) but less than (5) | 40% |
| | five (5) but less than six (6) | 60% |
| | six (6) but less than seven (7) | 80% |
| | after seven (7) years | 100% |

      2. No years of service are excluded for benefit calculation purposes.

6. **SELF-EMPLOYED PARTICIPANTS - Limitations § 1.04(a)(4)**

   Proprietors and partners do not participate in this Plan.

7. **BENEFIT INTEGRATION**

   The Benefits under this Plan are not integrated with or reduced by the Benefits under other private or public plans.

Copyright by Penn-Mont Benefit Services, Inc.                    2                    REAL VEBA (Rel.4/95)

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

FEB-22-96  THU  14:24  L.Michaels                           P.01
TOTAL P.02

8.    PARTICIPATION AND BENEFIT DURATION

        a.      Participation in Life Benefits

                **Service Period Only**
                On an Employee's Severance for any reason other than his death, his participation in the Plan shall cease.
                The participation of his spouse and dependents shall terminate on Severance for any reason, including
                death.

                Nothing herein shall serve to hinder a Participant's exercise of conversion rights on any Contract.

        b.      Duration of Life Benefits

                1.      Except as provided in paragraph (2), the Life Benefit shall consist only of current protection,
                        containing no economic value (such as paid-up or cash surrender value) extending beyond one
                        Plan Year, irrespective of whether the provision of such benefit is funded by the Trustee with
                        ordinary variable, universal, or other life Contracts. The Participant shall have no rights in the
                        Contract other than death benefit protection. Accordingly, a Participant's life benefit will in
                        no event continue for more than twelve (12) months past the date of Participant's Severance
                        (or his related Employee);

                2.      Paragraph (1) shall not apply to any participant's conversion rights on any Contract, which are
                        subject to the discretion of the Trustee.

9.    COMMITTEE - § 6.01

        a.      Appointment, Acceptance and Authorized Signatures of Plan Committee:

The Committee shall consist of three (3) members, and its initial membership is set forth below.
Each appointed member hereby acknowledges and accepts appointment to the Committee.

_____        Harry N. Moushian
Signature

_____        Lawrence Michaels
Signature

_____        John J. Koruche V, Esquire, C.P.A.
Signature

        b.      Provisions

This election by the Employer is irrevocable and supersedes Article 6, Section 6.01 of the Plan. In the event changes take place
in the membership of the Committee, the remaining Committee members shall appoint new members. The Committee shall
notify the Trustee of the changes and provide specimen signatures of the new members as provided in Section 6.01(b).

John J. Koruche, V is appointed as secretary of the Committee and the Committee and the Trustee are authorized to act upon
the signature of the Secretary alone in matters pertaining to the Trust and the Plan.

10.   INVESTMENT DIRECTIONS TO TRUSTEE

        a.      The above listed are the authorized names of the Committee appointed under Section IX of the Employer Welfare
                Benefit Plan under the REGIONAL EMPLOYERS ASSURANCE LEAGUES VEBA Trust upon whose direction
                the TRUSTEE, in this case COMMERCE BANK, N.A. may rely for monies to be mixed by the Committee
                according to the provisions of the Plan.

        b.      The Trust is a directive Trust, and the Committee shall direct the investment program of the Trustee, subject to the
                veto power of the Trustee to prohibit purchases of Plan assets which the Trustee will not hold, or which would subject
                the Trust to unrelated business taxable income, or which the Trustee determines, in its absolute discretion, would
                be detrimental to the League, the Plan and Trust or constitute a breach of fiduciary duty. In any event, the Trustee
                shall have the discretion to choose the vendor of any investment vehicle or annuity.

Copyright by Penn-Mont Benefit Services, Inc.                    3                              REAL VEBA (Rd.4.05)

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

P.02                                                            FEB-22-1996  13:37

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

11.   **CONSENT TO BE A PARTY TO TRUST AGREEMENT**

On this date, as set forth below, HARRY H. MONOKIAN, D.M.D., P.A. (hereinafter "Employer"), by its duly authorized officers or representatives, does hereby agree to become a party to that certain Trust Agreement known as The Regional Employer Assurance League Voluntary Employees' Beneficiary Association Trust (hereinafter "Trust"), which is attached hereto and incorporated herein in its entirety. The capitalized terms used herein shall be given the same meaning as set forth in the Trust.

On behalf of Employer, the undersigned represents and warrants for the benefit of the Trust and COMMERCE BANK, N.A. (hereinafter "Custodial Trustee"), the following:

a.   HARRY H. MONOKIAN, D.M.D., P.A. is the "employer" with respect to the Plan as defined in Section 3(5) of ERISA.

b.   The League has appointed Penn-Mont Benefit Services, Inc., as contractor for plan administrator services and record keeper of the Plan and has authorized Penn-Mont Benefit Services, Inc., to act on behalf of the League and Employer in communicating instructions to the Custodial Trustee.

c.   Employer has full power and authority to execute, deliver and perform this Consent To Be A Party on behalf of itself and the Plan, and this Consent To Be A Party constitutes the valid and binding undertaking of Employer and the Plan in accordance with its terms.

Employer agrees to be bound by the terms of the Trust Agreement including, without limitation, the provisions regarding indemnification of the Custodial Trustee as set forth in Article VII and X of the Trust Agreement, which provisions are hereby expressly adopted by the Adopting of the Plan in the Trust pursuant to this Consent To Be A Party and to accept the designation of the Custodial Trustee as a trustee of the Plan.

The undersigned acknowledges that it has not relied on the Custodial Trustee for any investment or tax advice, or any advice regarding the Trust, including, but without limitation to any advice regarding the tax deductibility of contributions to the Trust, or upon tax qualifications of the Trust, or any investments therein, or upon the ultimate disposition of the Trust Fund. The Custodial Trustee's involvement in the Trust does not constitute an endorsement of the League or the benefits offered under the Plan.

On behalf of Employer, the undersigned has read the Trust Agreement, understands and acknowledges the terms and provisions contained therein, and agrees to be bound thereby.

12.   **CERTIFICATE OF INTENTION AND UNDERSTANDING**

The undersigned Employer acknowledges that:

a.   this plan is not a retirement plan.

b.   it has not terminated a retirement plan in connection with the enactment of this Plan or if so, it has terminated such retirement Plan for reasons unrelated to the benefits to be provided under this Plan.

c.   it has not been advised, either orally or in writing, by any representative or agent of the League, Plan, Trustee, or Administrator, that this Plan is a substitute for a qualified retirement plan.

d.   if paragraphs a., b. or c. are untrue, the tax-qualified status of this Plan will be impaired and the Trustee reserves the right to involuntarily terminate the Employer's participation in the Plan.

IN WITNESS WHEREOF, the Employer has executed this Adoption Agreement this _____12th_____ day of ___Oct___ , 1995.

**EMPLOYER:**   HARRY H. MONOKIAN, D.M.D., P.A.

**BY:**   _Signature_
          Signature of Harry H. Monokian, President

Employer is a "C" corporation organized under the laws of New Jersey.

Tax Identification Number:   ███████

Address:   151 Greentree Road, Suite A - Marlton, NJ 08053

Telephone:   ███████

Contact person:   Harry H. Monokian

Copyright by Penn-Mont Benefit Services, Inc.   4   REAL VEBA (ReIARS)

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

# APPLICATION FOR REAL VEBA MEMBERSHIP

**Name of Corporation:**   HARRY H. MONOKIAN, D.M.D., P.A.

**Street Address:**   151 Greentree Road, Suite A
Marlton, NJ 08053

**Phone:**

**Name of Contact:**   Harry H. Monokian

**Number of Employees:**   Non-Union  12    Union  0

WE HEREBY apply for membership in The Regional Employees Assurance League:

**REGION:**   2

**CHAPTER:**   A

and seek permission to adopt the League's Voluntary Employees' Beneficiary Association Health and Welfare Benefit Plan and Trust, with the understanding that we will be eligible for all services and benefits until the League is notified in writing of any voluntary or involuntary termination of such membership. We understand that our membership is subject to the provisions of the League Charter and By-Laws, and we agree to be bound thereby.

We certify that our primary place of business lies within the geographic limitations of the Region applied for.

By: _Harry H. Monokian_

**Date:**   10/18/95                    **Title:** _____

**REGION 1: (NEW ENGLAND)**
MAINE, MASSACHUSETTS, RHODE ISLAND, VERMONT,
NEW HAMPSHIRE, CONNECTICUT

**REGION 2: (NORTH EAST)**
PENNSYLVANIA, NEW YORK, NEW JERSEY, DELAWARE

**REGION 3: (MID-ATLANTIC)**
NORTH CAROLINA, VIRGINIA, WEST VIRGINIA,
MARYLAND, KENTUCKY

**REGION 4: (SOUTH EAST)**
TENNESSEE, SOUTH CAROLINA, GEORGIA, FLORIDA,
ALABAMA MISSISSIPPI PUERTO RICO

**REGION 5: (GREAT LAKES)**
OHIO INDIANA ILLINOIS MINNESOTA, MICHIGAN

**REGION 6: (MID-WEST)**
WISCONSIN, IOWA, MISSOURI, NORTH DAKOTA,
SOUTH DAKOTA, NEBRASKA, KANSAS

**REGION 7: (SOUTH WEST)**
LOUISIANA, ARKANSAS OKLAHOMA, TEXAS, NEW MEXICO

**REGION 8: (ROCKY MOUNTAIN)**
MONTANA WYOMING, COLORADO, UTAH

**REGION 9: (WEST COAST)**
ARIZONA NEVADA, CALIFORNIA, HAWAII

**REGION 10: (NORTH WEST)**
IDAHO, WASHINGTON, OREGON, ALASKA

**CHAPTER A:** MEDICAL PROFESSIONALS

**CHAPTER B:** MERCHANTS

**CHAPTER C:** MANUFACTURERS

**CHAPTER D:** LEGAL PROFESSIONALS

**CHAPTER E:** BUILDING TRADESMEN

**CHAPTER F:** SERVICE PROFESSIONALS

**CHAPTER G:** ENTERTAINERS AND ATHLETES

Penn-Mont Benefit Services, Inc.                    REAL VEBA (Rel. 4/95)

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

## WAIVER OF NOTICE AND CONSENT TO HOLDING OF
## SPECIAL MEETING OF THE BOARD OF DIRECTORS OF

### HARRY H. MONOKIAN, D.M.D., P.A.

The undersigned, being all the Directors of a "C" corporation organized under the laws of New Jersey, desiring to hold a Special Meeting of the Board of Directors of said Corporation, hereby waive notice and consent to holding thereof on the

18th day of OCTOBER , 1995,

at  151 Greentree Road, Suite A
    Marlton, NJ 08053

at  12:35 A.M., and do further affirm and ratify motions which were received and adopted at said meeting and all action taken be valid and legal and the same force and effect as though notice of said meeting had been duly given.

WITNESS our signatures this

18th day of October , 1995,

X _Harry H. Monokian_
Signature of Harry H. Monokian, President

X _____
Signature of

X _____
Signature of

X _____
Signature of

*************************************************

### MINUTES OF SPECIAL MEETING OF
### BOARD OF DIRECTORS OF

### HARRY H. MONOKIAN, D.M.D., P.A.

The members of the Board of Directors of this Corporation held a special meeting, pursuant to the Waiver of Notice set forth above. All the Directors of the Corporation were present.

The President of the Corporation called the meeting to order. A discussion occurred concerning the establishment of a Voluntary Employees' Beneficiary Association Health and Welfare Benefit Plan under the REGIONAL EMPLOYERS ASSURANCE LEAGUES VEBA TRUST. The President indicated that it is in the interest of this corporation to establish and maintain for the benefit of certain employees of the corporation an Employees' Health and Welfare Benefit Plan.

On a motion duly made and seconded, it was unanimously resolved as follows:

RESOLVED, that this Company adopt the Voluntary Employees' Beneficiary Association Plan and Trust presented to this meeting by the President and appended hereto,

RESOLVED, that the named trustee be appointed as trustee of the Plan adopted at this meeting, and appended hereto,

RESOLVED, that the President be and hereby is authorized and directed on behalf of this corporation to execute this plan and to execute and deliver to the Trustee, the trust agreement attached to the plan with such changes in form as they deem appropriate,

RESOLVED, that the proper officers of this corporation be and they are authorized and directed to take such other action as may be necessary or appropriate to establish this plan, including, without limitation, and to comply with all disclosure and other requirements of law.

There being no further business to come before the meeting, the meeting will adjourned.

Date of Meeting: 10/18/95     X _Harry H. Monokian_
                               Signature of SECRETARY

REAL VEBA                                                    Rel. 4/95

Case# 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

01/05/2007  01:45   8564355283          MONOKIAN              PAGE  82

### WELFARE BENEFIT PLAN

For Employees of
HARRY N. MONOKIAN, D.M.D., P.A.

AMENDMENT OF ADOPTION AGREEMENT dated 10/18/95

The undersigned Employer adopted the Welfare Plan and its companion Trust by executing an Adoption Agreement on 10/18/95.  The referenced Adoption Agreement is hereby amended at paragraph M as follows, effective immediately:

**I.     BENEFITS - §1.01**

   d.    Other Benefits – Limitations [§1.03(c)]

         Health Benefits are provided after 12 months of service, with the entry date of January 1 of the following year:

         1.   Employee-Participants receive a health benefit in the form of payment of premiums to a medical provider, health insurance program or dental insurance program.
         2.   In no event do Health Benefits exceed the cash equivalent of $50,000 per annum per participating employee.
         3.   Spouse-Participants participate in Health Benefits.
         4.   Dependent-Participants other than spouses of Employees participate in Health Benefits.
         5.   In no event shall participation in this program be permitted to impair the funding of death benefits if provided by the Plan.

On behalf of Employer, the undersigned has read the Trust Agreement, understands and acknowledges the terms and provisions contained therein, and agrees to be bound thereby.

IN WITNESS WHEREOF, the Employer has executed this Amendment of Adoption Agreement this __31__ day of ____, 2006.

**EMPLOYER:**     HARRY N. MONOKIAN, D.M.D., P.A.

**BY:**           _Signature of Harry N. Monokian, President_

**ADDRESS:**      151 Commerce Road, Marlton NJ  08053

                  END OF AMENDMENT

01/05/2007  01:45  8564355283        MONOKIAN                    PAGE  03

### WAIVER OF NOTICE AND CONSENT TO HOLDING OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF

### HARRY E. MONOKIAN, D.M.D., P.A.

The undersigned, being all the Directors of the Company, desiring to hold a Special Meeting of the Board of Directors of said Corporation, hereby waive notice and consent to holding thereof on the

31 day of Dec 2006,

at  131 Greentree Road, Marlton NJ 08053

at  5:00 P.M., and do further affirm and ratify motions which were resolved and adopted at said meeting and all action taken to valid and legal and the same force and effect as though notice of said meeting had been duly given.

WITNESS our signatures this

31 day of Dec 2006,

x _[signature]_
Signature of Harry H. Monokian, Director

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MINUTES OF SPECIAL MEETING OF BOARD OF DIRECTORS OF

### HARRY E. MONOKIAN, D.M.D., P.A.

The members of the Board of Directors of this Corporation held a special meeting, pursuant to the Waiver of Notice set forth above. All the Directors of the Corporation were present.

The President of the Corporation called the meeting to order. A discussion ensued concerning certain provisions to the Company's Welfare Benefit Plan. The President indicated that it is in the interest of this corporation to modify the Adoption Agreement dated 10/1995, by adding a medical benefit, as set forth in the attached proposed Amendment to Adoption Agreement.

On a motion duly made and seconded, it was unanimously resolved as follows:

RESOLVED, that this Company amend the Adoption Agreement by which it participates in the Company Plan as such modifications have been presented to this meeting by the President and appended hereto;

RESOLVED, that the proper officers of this corporation be and they are authorized and directed to take such other action as may be necessary or appropriate to execute this plan, including, without limitation, and to comply with all disclosure and other requirements of law

There being no further business to come before the meeting, the meeting was adjourned.

Date of Meeting 12/31/06       x _[signature]_
                               Signature of SECRETARY

Case # 2009-35200-3 Received at Montgomery County Prothonotary on 11/25/2009 1:52 PM, Fee = $0.00

# EXHIBIT 5

### RECEIPT, RELEASE, REFUNDING AND INDEMNIFICATION AGREEMENT

WHEREAS, the Employer adopted the Health and Welfare Plan and Trust; and

WHEREAS, The Employer has notified the Trustee of its intention to terminate the Employer's Plan; and

WHEREAS, the operative documents of the Plan empower the Trustee to make distribution in accordance with the Plan and Trust and to procure a receipt and release in such form as shall be determined by the Trustee; and

WHEREAS, the Trustee will make distribution upon receipt of properly executed documents.

NOW THEREFORE, in consideration of the premises and mutual promises contained herein, and intending to be legally bound by this document as an agreement under seal,

The undersigned Employer and Employee Participant in the Welfare Benefit Plan do hereby;

1. Acknowledge that he/she has examined and approved the termination distribution, as calculated by the Plan Administrator, as reflected in the schedule attached hereto;

2. Have elected to ___ Take or X Not Take ownership of the Plan Policy which insures my life.

3. Waive the filing of an accounting in any court of competent jurisdiction;

4. Acknowledge receipt of the sum allocated to him/her;

5. Release, settle and forever discharge all claims, demands, actions, or causes of action, legal or equitable, absolute or contingent, vested or hereafter accrue, which they may have against Community Trust Company, Trustee, First Union National Bank, former Trustee, CoreStates Bank, N.A., former Trustee; Commerce Bank, N.A., former Trustee, Penn Public Trust, former Trustee; Penn-Mont Benefit Services, Inc., Administrator; and the Regional Employers Assurance Leagues, formerly Delaware Valley League of Medical Professionals (North), their agents, heirs, employees, shareholders, attorneys, contractors, and personal representatives (the "Released Parties") from all liabilities, by reason of any matter or cause growing out of or relating to any act or omission of the Released Parties, the proximate cause of which was an action of the Employer (including, by way of example, the provision, to a Released Party, of faulty data intended to be used to calculate any benefit under the Plan), which he/she may have by reason of participation in and administration and/or operation of the Plan.

6. Agree to refund to the Trustee or Plan Administrator any portion of the distribution to which he/she is not properly entitled, and, up to the amount of said distribution, to indemnify them for all claims made against them by any other Plan participant or beneficiary, their assignees, heirs or assigns, thereof, as Trustee or Plan Administrator, and to reimburse them for all expenses, attorneys fees, and cost incurred in connection with any such claim; and

7. Declare that this instrument shall be legally binding upon him/her, his/her personal representatives, agents, employees, successors and assigns.

For purposes hereof, the singular shall include the plural and vise versa.

IN WITNESS WHEREOF, I(we) have hereunto set our hands and seals this date indicated below by my(our) signature(s) hereon.

_____
WITNESS

NAME:  Cindy Monokian, President
MIDA, INC.
DATED:  12/14/07

_____
WITNESS

NAME:  Cindy Monokian, INDIVIDUALLY

# EXHIBIT 6

## REGIONAL EMPLOYERS ASSURANCE LEAGUES
## VOLUNTARY EMPLOYEE BENEFICIARY ASSOCIATION
## ["REAL VEBA"]

### EMPLOYEE PARTICIPATION AGREEMENT

EMPLOYEE:      Cindy Monokian

EMPLOYER:      MIDA, INC.

The undersigned Employee hereby agrees to participate in the Employer's Welfare Benefit Plan, adopted under the Regional Employers' Assurance Leagues ("REAL") Voluntary Employees' Beneficiary Association ("VEBA") plan and trust. The undersigned certifies that his/her participation is voluntary, and agrees to abide and be bound by the rules and regulations adopted by the Trustee, Plan Administrator, and/or the League relating to participation in REAL VEBA. The undersigned acknowledges that the provisions of REAL VEBA may be amended or terminated at any time; and therefore, any benefits provided may be modified or eliminated in the future.

### LIMITED POWER OF ATTORNEY

The undersigned Employee hereby appoints Penn-Mont Benefit Services, Inc. ("Penn-Mont"), the present plan administrator and John J. Koresko, V, Esquire, secretary of the plan committee, or their authorized agent, employee, or delegate, to serve as Limited Attorney in Fact with respect to all matters connected with and/or related to the procurement and maintenance of benefits payable to Employee pursuant to REAL VEBA and the Employer's Welfare Benefit Plan. Without limiting the generality of the foregoing, the Limited Attorney in Fact shall have the authority to complete and execute any and all documents on behalf of Employee, including applications for insurance coverage, orders to secure, exchange, or terminate insurance contracts, or any other document considered by the plan administrator, in its sole and absolute discretion, to be incident to administration or operation of the plan. This limited power of attorney shall be irrevocable so long as REAL VEBA is in existence, and shall not be affected by Employee's subsequent disability, incapacity, incompetency or death. Employee agrees, for itself, its heirs, personal representatives, successors and assigns, to release the REAL VEBA Trustee, Penn-Mont, Mr. Koresko, their agents, employees, successors and assigns, and any other third parties who rely on the validity of this document, from any liability which may result from any action taken in reliance on or in connection with this document and the powers granted hereunder.

x _Cindy Monokian_          WITNESS SIGNATURE and NAME
Signature of Cindy Monokian     x _____

                            _Lawrence Koresko_
                            Print Name of Witness

Date: _12|8|98_             Date: _12|8|98_

Copyright by Penn-Mont Benefit Services, Inc.                    REAL VEBA (Rel.4/95)

# EXHIBIT 7

## PARTICIPATION AGREEMENT

EMPLOYEE:   Harry H. Monokian

EMPLOYER:   HARRY H. MONOKIAN, D.M.D., P.A.

The undersigned Employee hereby agrees to participate in the Employer's Welfare Benefit Plan, adopted under the Regional Employers' Assurance Leagues ("REAL") Voluntary Employees' Beneficiary Association ("VEBA") plan and trust. The undersigned certifies that his/her participation is voluntary, and agrees to abide and be bound by the rules and regulations adopted by the Trustee, Plan Administrator, and/or the League relating to participation in REAL VEBA. The undersigned acknowledges that the provisions of REAL VEBA may be amended or terminated at any time; and therefore, any benefits provided may be modified or eliminated in the future.

### LIMITED POWER OF ATTORNEY

The undersigned Employee hereby appoints Penn-Mont Benefit Services, Inc. ("Penn-Mont"), the present plan adminstrator and John J. Koresko, V, Esquire, secretary of the plan committee, or their authorized agent, employee, or delegate, to serve as Limited Attorney in Fact with respect to all matters connected with any and all matters relating to the procurement and maintenance of benefits payable to Employee pursuant to REAL VEBA and the Employer's Welfare Benefit Plan. Without limiting the generality of the foregoing, the Limited Attorney in Fact shall have the authority to complete and execute any and all documents on behalf of Employee, including applications for insurance coverage, orders to secure, exchange, or terminate insurance contracts, or any other document considered by the plan administrator, in its sole and absolute discretion, to be incident to administration or operation of the plan. This limited power of attorney shall be irrevocable so long as REAL VEBA is in existence, and shall not be affected by Employee's subsequent disability, incapacity, incompetency or death. Employee agrees, for itself, its heirs, personal representatives, successors and assigns, to release the REAL VEBA Trustee, Penn-Mont, Mr. Koresko, their agents, employees, successors and assigns, and any other third parties who rely on the validity of this document, from any liability which may result from any action taken in reliance on or in connection with this document and the powers granted hereunder.

x _Harry H. Monokian_
Signature of Harry H. Monokian

x _Monokian_
Witness Signature

x _Cindy Monokian_
Print Name of Witness

Date: 2/22/98

Date: 2/22/98

Copyright by Penn-Mont Benefit Services, Inc.                    REAL VEBA (Rel 4/95)

# EXHIBIT 8

**MIDA, INC.**
FAX 

To: Community Trust Company, Trustee, f/b/o MIDA, INC., WELFARE BENEFIT PLAN Trust:

**1.    Trustee's Notice of Effective Date of Termination.**

Effective November 9, 2007, MIDA, INC. terminates participation in its WELFARE BENEFIT PLAN Trust.

Signature of Cindy Monokian, President

**2.    Employer's Acknowledgment of Termination Distribution: Cash Only, No Life Insurance**

I hereby acknowledge that the Trustee will surrender the plan policy and that participants will receive the plan asset value after any charges. I understand that the Cash Surrender Value of individual policies may be less than the Accumulated Value and I have evaluated the respective value of each policy and made an informed decision whether to take cash distribution versus distribution of policies. Participant/recipients are responsible for income tax on the cash received.

Signature of Cindy Monokian, President

**3.    Employer's Certification of Census Data [required for calculation of distribution]**

I hereby certify that the attached census data setting forth each employees name, social security number, salary, hire date and termination date, where applicable, is true and accurate for all the years of MIDA's participation in its WELFARE BENEFIT PLAN.

Signature of Cindy Monokian, President

**4.    Employer's Acknowledgment of Termination Fee.**

I hereby acknowledge deduction of the $ 5,000 termination fee and administrative/trustee fees due from the cash surrender value remaining in said Plan prior to distribution to plan participants.

Signature of Cindy Monokian, President

**5.    Employer's Acknowledgment of Distribution Formula.**

I hereby acknowledge and accept the attached distribution formula.

Signature of Cindy Monokian, President

## VERIFICATION

Lawrence Koresko, on behalf of Plaintiff, verifies that the statements made in the Complaint are true and correct to the best of his knowledge, information and belief.  Plaintiff understands that false statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Ann. §4904, relating to unsworn falsification to authorities.

Dated
3.29.2010                            Lawrence Koresko